CARGILL LEASING CORPORATION, A DELAWARE CORPORATION, APPELLEE, V. MERLE MUELLER, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, CIRCLE 8 FARMING, INC., ET AL., THIRD-PARTY DEFENDANTS, APPELLEES.

335 N.W.2d 277

Filed June 10, 1983. No. 82-355.

Donn K. Bieber of Otradovsky & Bieber, for appellant.

John K. Green and Nelson & Harding, for appellee James Irwin.

KRIVOSHA, C.J., WHITE, CAPORALE, and SHANAHAN, JJ., and EMPSON, D.J.

EMPSON, D.J.

James Irwin was in the business of selling machinery on consignment, doing business as Consignment Sales Association. He obtained some farm machinery for sale on consignment from Circle 8 Farms, Inc.

Merle Mueller answered a newspaper advertisement placed by Irwin by calling the telephone number given. In that telephone conversation Irwin informed Mueller that he was selling equipment for Circle 8 and that some of the equipment was leased by Circle 8 from its owner, Cargill Leasing Corporation. The two men agreed to meet in Neligh to view the machinery.

On his way to Neligh, Mueller stopped to visit an attorney employed at Mueller's bank. His object was to get advice concerning how to protect himself if he decided to buy leased machinery.

Upon examining the equipment Mueller selected a combine and cornhead which were owned by Cargill and leased by Circle 8. After the price was negotiated Mueller required Irwin to obtain "a written contract assuring that the owner of the combine would be paid . . . ."

Irwin and Mueller met again a few days later to complete the deal. Irwin presented to Mueller an

unsigned copy of a letter directed to Mueller bearing the names and titles of Glenn Williams, director, Marlin Krohn, secretary, and Robert Hughes, treasurer; all of "Circle 8 Farming, Inc." The letter reads: "Dear Mr. Mueller: This letter is your confirmation that you have purchased a Cargill leased combine and this letter will also confirm to you that the monies paid on the combine will be applied to the payoff of the combine to Cargill Leasing." Irwin represented to Mueller that the original of the letter was "on its way" to Mueller.

Mueller was satisfied with the copy of the letter and with Irwin's representation and wrote Irwin a check for the agreed price of the combine and cornhead. On the copy of the letter from Circle 8, Irwin wrote, over his signature, a receipt for payment, which reads: "Received Payment Full for $44,000.00 for 1460 Combine & 863 Corn Head - C.S.A." Mueller took the copy of the letter and drove the combine away. Mueller, later that same day, received in the mail the original letter from Circle 8, signed by the persons named.

Irwin deposited Mueller's check, retained his commission, and delivered the balance of the purchase price to Circle 8. Contrary to the promises made in the letter, Circle 8 did not pay Cargill. Eventually, Cargill replevied the combine and cornhead.

Mueller impleaded Irwin, among others, in that lawsuit, and obtained judgment by default against Circle 8, Williams, Krohn, and Hughes.

After trial to the court Mueller's third-party petition was ordered dismissed as to Irwin, and Mueller appeals.

Since Irwin, from the outset, revealed to Mueller that he was selling machinery for Circle 8, Irwin was the agent of a disclosed principal. None of Irwin's conduct was consistent with an intention to incur personal liability. Further, there is no question of fraud here on the part of Irwin. Mueller knew everything Irwin knew about the status of the

machinery. Irwin did exactly what he represented to Mueller he would do—he paid Circle 8. "It is a fundamental rule that an agent who contracts on behalf of a disclosed principal, in the absence of some other agreement to the contrary or other circumstances showing that the agent has expressly or impliedly incurred or intended to incur personal responsibility, is not liable to the other contracting party." *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 48, 302 N.W.2d 655, 665 (1981).

There is no theory of law under which Irwin can be held liable for Circle 8's failure to pay Cargill.

AFFIRMED.