In re Interest of Kelly D., a child under 18 years of age.
State of Nebraska, appellant and cross-appellee, v. Karen
D., appellee, and Paul D., appellee and cross-appellant.

526 N.W.2d 439

Filed December 20, 1994.    Nos. A-93-762, A-93-763.

Don Stenberg, Attorney General, Royce N. Harper, and James L. Hatheway, Special Assistant Attorney General, for appellant.

Roger C. Lott for appellee Paul D.

Roberta S. Stick, guardian ad litem for Kelly D.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

This appeal involves the disposition of a case in which a child has been adjudicated as a child lacking proper parental care under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). The disposition order of the juvenile court was different than the disposition proposed by the Department of Social Services (DSS) in its predispositional report. DSS requested review by a review panel as provided under Neb. Rev. Stat. §§ 43-287.01 to 43-287.06 (Reissue 1993), and that panel modified the juvenile court's disposition, but upon return of the case, the juvenile court found that the review panel lacked jurisdiction to order the action it ordered. DSS appeals both from the order of the review panel and from the order of the juvenile court which determined that the review panel's decision was unenforceable. The child's father cross-appeals from the order entered by the review panel. The appeals have been consolidated for the purposes of briefs and oral argument and will be considered together in this opinion.

While the orders appealed from and the briefs couch the issues in terms of jurisdiction, the basic issue in this appeal is what authority a juvenile court has in the case where a child's custodial parent is properly caring for the child, but the noncustodial parent of that child has propensities which would be a risk to that child if the child is not protected from the

noncustodial parent, and there is no allegation or evidence that the custodial parent is unwilling and unable to protect that child from the other parent. We conclude that in such a case, the statutes do not contemplate interference with the custodial parent's custody, and that the juvenile court was without jurisdiction to adjudicate the child as a child defined under § 43-247(3)(a). Consequently, we reverse the orders of both the juvenile court and the review panel and remand the cause with directions to dismiss the proceeding.

## BACKGROUND

Kelly D., born on November 30, 1990, is the daughter of Karen and Paul D. In April 1992, Karen left the family home. Since that time, the couple have been separated, and Paul has had custody of Kelly. After leaving home, Karen apparently contacted Child Protective Services, informing them that she had sexual thoughts about Kelly, that she had digitally penetrated Kelly's vagina on at least two occasions, and that she was afraid she would hurt Kelly. On January 29, 1993, the Lancaster County Attorney filed a petition in which it was alleged that Kelly was a juvenile as defined by § 43-247(3)(a), because:

### COUNT I.

Said child lacks proper parental care by reason of the fault or habits of her mother, Karen [D.] in that:

A) On several occasions since April 2, 1992, Karen [D.] has had sexual thoughts toward Kelly [D.]; specifically wanting to put her finger in Kelly's vagina. Karen [D.'s] emotional and mental health and alcohol/drug usage has affected her parenting abilities in that she has not been able to parent Kelly on a day to day basis since April, 1992. Karen [D.] fears being alone with Kelly [D.] due to her sexual desires toward said child thereby placing said child at risk.

. . . .

C) All in Lancaster County, Nebraska.

The petition listed Karen and Paul as Kelly's parents and listed their separate addresses. It was served on both Karen and Paul.

The bill of exceptions does not contain a record of the proceedings of the March 19, 1993, adjudication hearing. The transcript contains a copy of the journal of that hearing. It shows the presence of the parties, their separate counsel, the State's attorney, and the guardians ad litem for both Karen and Kelly. It shows that "[r]ights and warnings were explained as required by provisions of Nebraska Revised Statute." The record shows that Karen admitted the allegations "in Paragraphs 1 (A) and (C)" and that Karen "was sworn and testified." The court also made factual findings, but those findings are essentially the facts alleged in the petition. The juvenile court found that it had jurisdiction over Kelly pursuant to § 43-247(3)(a) "by reason of the lack of proper parental care by reason of the fault and habits of her mother." The court ordered that a predisposition report be prepared by DSS.

The predisposition report, dated April 15, 1993, recommended that legal custody of Kelly be placed with DSS, that both Paul and Karen undergo psychological testing, that Paul and Karen be required to meet with the Child Protective Services case manager, and that Paul and Karen be required to sign releases of information for certain counselors and psychologists each consulted and to furnish such information to Child Protective Services. The report recommended that Karen be given a minimum of 9 hours supervised visitation with Kelly and recommended that Paul be required to "cooperate fully with said visitation plan arranged and directed by the Nebraska Department of Social Services and no [sic] interfere with Kelly's relationship with Karen [D.]"

At the April 21, 1993, dispositional hearing, the court disapproved DSS' dispositional plan. It is clear that it did so because the proceedings did not contain allegations or findings against Paul. In its journal entry, the court stated:

> [T]o the extent that the case plan presented by [DSS] exceeds the Court's jurisdictional basis, the plan is disapproved as it is not material to the Court's jurisdictional basis as there has been no filing of allegations or finding by the Court regarding the parental care provided by [Paul] . . . . The Court's jurisdictional basis relates solely to the adjudication pertaining to

[Karen] and, as such, the Court's order must be tailored to be material to the jurisdictional basis pertaining to [Karen].

The court then placed Kelly under the "supervision of [DSS]," required Karen to undergo psychological testing, provided that DSS and the guardian ad litem "shall have access to Kelly [D.] at all reasonable times and places," provided minimum visitation for Karen, and required Paul to cooperate with the visitation plan as ordered. This order does not state that Paul shall have custody of Kelly, but its wording assumes that he has custody and that he will keep custody of her.

DSS then requested a review of the dispositional order by the juvenile review panel, pursuant to §§ 43-287.01 to 43-287.06. The review panel was likewise concerned with the lack of proceedings or allegations against Paul and stated it believed that under Neb. Rev. Stat. § 43-279.01 (Reissue 1993), an adjudication in regard to the father was mandatory. The panel ordered an adjudication be undertaken against Paul.

The journal entry from August 17, 1993, shows that the juvenile court received and reviewed the panel's order and found that the

Order of the Juvenile Review Panel is outside the scope of the power of review as set forth in Neb. Rev. Stat. § 43-287.05 and does not present a dispositional plan that can be implemented by this Court and, therefore, the Juvenile Review Panel's Order of July 30, 1993, is not enforceable.

DSS has appealed from this "order" and that of the review panel.

## ASSIGNMENTS OF ERROR

DSS alleges that the review panel erred when it (1) refused to require the juvenile court to consider evidence regarding Paul, (2) when it failed to find that requiring Paul to comply with certain provisions of the dispositional plan was in the best interests of Kelly, (3) when it failed to hold that legal custody of Kelly should have been given to DSS, and (4) when it failed to hold that the juvenile court had no jurisdiction over DSS and could not order it to comply with the plan. DSS also alleges that

the juvenile court erred when it declared the review panel's decision invalid and decided not to abide by the panel's order.

Paul cross-appealed from the order of the review panel, alleging that the review panel erred when it ordered the juvenile court to reopen the adjudication phase.

We dismiss this case because the juvenile court did not have jurisdiction of the matter, and therefore we do not consider the assigned errors.

## STANDARD OF REVIEW

■ An appeal from a final order or judgment entered by the juvenile review panel shall be reviewed by the Court of Appeals or the Supreme Court de novo on the record submitted to the panel. § 43-287.06. An appeal to the Court of Appeals or the Supreme Court from a juvenile court is reviewed de novo on the record. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W 2d 635 (1994).

■ Subject matter jurisdiction may be raised sua sponte by an appellate court. *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994); *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992).

■ Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of the conclusion of the trial court. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994); *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

## ANALYSIS

■ A review of the basic principles that are applicable to this case will be helpful in our analysis. "The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child." *In re Interest of C.P.*, 235 Neb. 276, 284, 455 N.W.2d 138, 144 (1990).

The constitutional effect of the natural right was summarized in *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 767, 408 N.W.2d 272, 277 (1987):

In *State v. Metteer*, 203 Neb. 515, 521-22, 279 N.W.2d 374, 378 (1979), we stated that "[t]here is no doubt that

among the fundamental rights retained by the people under Article IX of the Bill of Rights of the Constitution of the United States is that of integrity of the family." In *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 577, 385 N.W.2d 448, 451 (1986), we noted that " 'the relationship between parent and child is constitutionally protected.' " Quoting *Quillion v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978). Since the right involved is fundamental in nature, the statute interfering with that right is subject to strict scrutiny. *Shoecraft, supra.*

On the other hand:

[T]he jurisdiction of the State in juvenile adjudication cases arises out of the power every sovereignty possesses as parens patriae to every child within its borders to determine the status and custody that will best meet the child's needs and wants. See *Stewart v. McCauley*, 178 Neb. 412, 133 N.W.2d 921 (1965). In that case, we elaborated on the role of the juvenile court: "The juvenile court is a product of the solicitude of the law for the welfare of infants. Its powers and duties are described more or less in detail in our statutes, and because of their humanitarian and beneficient [sic] purpose, they should be liberally construed to the end that their manifest purpose may be effectuated to the fullest extent compatible with their terms."

*In re Interest of M.B. and A.B.*, 239 Neb. 1028, 1030, 480 N.W.2d 160, 161 (1992).

The pertinent part of the applicable statute relied upon for the court's jurisdiction in this case, § 43-247, is as follows: "The juvenile court shall have exclusive original jurisdiction as to . . . . (3) Any juvenile (a) . . . who lacks proper parental care by reason of the fault or habits of his or her parent . . . ."

We have reviewed all of the cases we were able to locate in which the Supreme Court has considered either an adjudication of a child under § 43-247(3)(a) or the termination of parental rights of both parents when only one of the parents is the source of the abuse or possible abuse which might injure the child. We find in these cases that the parent who might injure the child

was either living with the child or had ready access to the child, as in *In re Interest of D.A.*, 239 Neb. 264, 475 N.W.2d 511 (1992), and *In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985), or in its opinion, the court stated that the custodial parent could not or would not protect the children from the dangerous spouse, as in *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992); *In re Interest of M.B. and A.B.*, 239 Neb. 1028, 480 N.W.2d 160 (1992); *In re Interest of B.B. et al.*, 239 Neb. 952, 479 N.W.2d 787 (1992); and *In re Interest of D.P.Y. and J.L.Y.*, 239 Neb. 647, 477 N.W.2d 573 (1991).

The case *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987), is an exception. In that case, the parents were separated, the children were in the custody of their mother, and the father had regular visitation with the children. The opinion shows that the father's visitations were discontinued in December 1985 and the action was filed on April 3, 1986. In that opinion, the court did not state whether the mother sought help from DSS, but the proposed plan provided for custody to remain with the mother. The case contained no discussion of the issues under consideration in this case.

■ In *In re Interest of W.C.O., supra,* the Supreme Court stated that in order for a child to lack proper parental care by reason of the fault or habits of its parent under § 43-247(3)(a), " ' "[a] child must in fact be dependent and neglected at the time proceedings are instituted to have it declared a neglected and dependent child, *or it should be in danger of so becoming in the near future.*" ' " 220 Neb. at 419, 370 N.W.2d at 153, quoting *Jones v. State*, 175 Neb. 711, 123 N.W.2d 633 (1963). The Supreme Court also stated:

> It is not the intent or purpose of the juvenile code to require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. If it is reasonable to assume that injury will occur absent action by the court, then the court may acquire jurisdiction.

220 Neb. at 419, 370 N.W.2d at 153.

In *In re Interest of M.B. and A.B*, 239 Neb. at 1030, 480 N.W.2d at 161-62, the court said: "If evidence of the fault or

habits of a parent or custodian indicates a risk of harm to a child, the juvenile court may properly take jurisdiction of that child, even though the child has not yet been harmed or abused."

In the case at hand, the question is whether it is reasonable to assume that Karen would harm her child in the situation the parties were in at the time the petition was filed. We will assume that Karen's admitted inclinations and her emotional and mental problems, as well as her abuse of alcohol and drugs, make her a risk to Kelly, if she has the opportunity. However, for Karen to pose a reasonable risk of harm to Kelly, she must have the opportunity to harm the child during either visitation or custody. There are no allegations in the petition that Karen had access to Kelly. The allegation in the petition that Karen had penetrated Kelly's vagina with her finger was denied by Karen, and this allegation was withdrawn by the State and stricken from the petition.

The record contains no allegation or evidence that would support a finding that Paul was unwilling or unable to protect Kelly from Karen. As the facts appear to us, we wonder why, upon Karen's report that she had sexual thoughts toward her daughter, DSS did not simply tell Paul of this fact and ascertain if he was willing and able to protect Kelly from Karen. If he was willing and able to do so, Kelly was not subject to a reasonable risk of harm, and no proceedings need have been commenced. If Paul indicated he was not willing and able to protect Kelly, the State could then institute proceedings against both parents, and there would be a sound basis for the court to acquire jurisdiction.

DSS' report to the court is in evidence. This report was prepared after the adjudication hearing, and even it does not show that Paul was not willing and able to protect Kelly from Karen. On separate grounds, this report maintains the Paul is not a perfect parent and that it would be in Kelly's best interests if custody were taken from Paul and given to DSS. The failure of the juvenile court to make such a finding is assigned as an error. It should be noted, however, that DSS does not report that Kelly lacks proper parental care by reason of Paul's fault. The procedure followed in this case avoids placing that question

before the court. Yet, DSS maintains Paul should be deprived of the custody of his daughter.

Even if DSS' investigation did uncover facts which led its officials to believe Paul was not capable of giving Kelly proper care, DSS cannot adjudicate his rights. Paul would be entitled to an adjudication hearing to dispute DSS' findings and an appeal from any determination which might be made against him. The significant point is that the proceeding espoused by DSS would deprive Paul of his constitutional right to the peaceable custody of his child, without notice of charges that Kelly lacks proper care due to his conduct and without a hearing on those charges.

DSS' plan recommended, among other things, that custody of Kelly be placed with DSS, that Paul and Karen undergo psychological testing, that DSS and the guardians ad litem have access to Kelly at all times, and that Paul sign a release form to release information from any treatment or counseling program in which he had participated. The lack of an adjudication on Paul's ability to care for Kelly was of concern to the juvenile court, but the court attempted to resolve the issue by finding that DSS' plan "exceeded the Court's jurisdictional basis." The juvenile court's solution to its jurisdictional problem was to refrain from ordering that Paul must comply with DSS' recommended requirements. However, refraining from exercising full control over Paul does not resolve the jurisdictional problem. If a child has been properly adjudicated under § 43-247(3)(a), then the court has jurisdiction over the custodial parent and may exercise control over the custodial parent. § 43-247(5). If a custodial parent is going to be subject to the court's jurisdiction because that parent's child is adjudged as a child under § 43-247(3)(a), then that custodial parent should receive notice that his or her parental rights may be curtailed and a hearing at which the parent could defend his or her rights.

The adjudication of Kelly as a child defined in § 43-247(3)(a) was not appealed. An adjudication order in a juvenile court is an appealable order, and an appeal, if not made within 30 days after the order is entered, will be dismissed. *In re Interest of C. W. et al.*, 238 Neb. 215, 469 N.W.2d 535 (1991).

However,

[i]f the pleadings and the evidence at the adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, then the juvenile court has no jurisdiction, i.e., no power, to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proven by new facts at a new adjudication-disposition hearing.

*In re Interest of D.M.B.*, 240 Neb. 349, 352, 481 N.W.2d 905, 909 (1992).

■ While none of the parties appealed the adjudication order, lack of subject matter jurisdiction may be raised sua sponte by an appellate court. *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994); *In re Interest of D.M.B., supra.* Subject matter jurisdiction cannot be conferred upon a court by the acquiescence or consent of the parties, nor may it be created by waiver, estoppel, or conduct of the parties. *Scherbak, supra.*

In *In re Interest of Constance G., ante* p. 1, 520 N.W.2d 784 (1994), an adjudication was made against the mother, but not the father. A panel of this court said:

It was imperative that the juvenile court, under the circumstances of this case, make a finding regarding the alleged inadequacies of each parent. Both parents were named in the petition, and an adjudication that the juvenile court has jurisdiction over a minor child is the first step in a process which potentially has grave consequences to both parents.

*Id.* at 6, 520 N.W.2d at 788.

In *In re Interest of Constance G.*, as in this case, the rights of the father were simply ignored while the trial court dealt with the alleged unfitness of the mother.

In oral argument, the attorney for DSS argued that *In re Interest of Constance G.* is distinguishable from the case at hand because in *In re Interest of Constance G.* the minor was adjudicated to be homeless and destitute under § 43-247(3)(a), whereas in the case at hand, the child was adjudicated under the same statutory provision, but the adjudication was due to the

conduct of the mother which DSS termed "fault." Apparently, DSS views this case as a child abuse case, and of course child abuse usually arises by reason of the fault of the abuser, whereas a child is perhaps homeless and destitute without fault on the part of the parents. However, in this case, the adjudicated facts do not establish that Karen actually did anything to the child, and therefore, *In re Interest of Constance G.* cannot be distinguished by the attempt to label the mother's thoughts toward her child as "fault." Furthermore, we do not believe the fault or lack of fault of one parent has anything to do with the rights of the other parent who has not abused or neglected the child. Whether the child lacks proper care, not the guilt or fault of the parent, is the controlling factor.

The chief distinction between this case and *In re Interest of Constance G.* is that we do not have a bill of exceptions of the adjudication hearing in this case, whereas the court had such a record in *In re Interest of Constance G.* The only record we have of the adjudication hearing is the journal, portions of which were quoted near the beginning of this opinion. The petition is sketchy in the extreme. Neb. Rev. Stat. § 43-274 (Reissue 1993) provides in significant part: "The county attorney . . . may file with the clerk of the court having jurisdiction in the matter, a petition in writing specifying which subdivision of section 43-247 is alleged, setting forth the facts verified by affidavit . . . ." In *In re Interest of L.D. et al.*, 224 Neb. 249, 258, 398 N.W.2d 91, 98 (1986), a case where the sufficiency of an unverified petition was considered, the Supreme Court stated, "[W]e find that an adjudication based on subsection (3)(a) of § 43-247 is analogous to a civil proceeding, which guides us in answering some of the questions present in the case now under consideration." It also stated, "A petition, as a pleading, is a plaintiff's or claimant's written statement of fact which invokes the jurisdiction of a court, sets out a cause of action, and seeks relief." *Id.* The court went on to hold that if there were any deficiency in the formality of the petition, the father had waived it by participating in the proceedings and requesting affirmative relief. In that case, the formal deficiency was the failure to verify the petition.

In the case at hand, the petition contains no allegations

claiming that the child lacked proper parental care by reason of the conduct of Paul, the person having custody of the child. The pleadings therefore show that Paul was given no notice of any claim against him or of the fact that the proceeding might interfere with his constitutionally protected rights to his child. In *In re Interest of Constance G.*, the panel concluded it was important that the court make a finding regarding the alleged inadequacies of each parent. In this case, we conclude that the petition must allege facts which would show that the child lacks proper parental care by reason of the inadequacy of any parent whose custody or right to custody might be affected, so that both parents may understand that the litigation concerns their respective rights. Under the circumstances of this case, the petition is so fundamentally inadequate that it could not be the basis of the juvenile court's jurisdiction. We therefore conclude that the juvenile court was without jurisdiction for the adjudication of March 22, 1993, and consequently of all the subsequent proceedings. We therefore reverse the orders of both the juvenile court and the review panel and remand the cause with directions to dismiss the proceeding.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.