MICRO/MINI SYSTEMS, INC., DOING BUSINESS AS COMPUTERS BY MALONE, APPELLANT, V. MICHAEL BOYLE AND BOYLE & ASSOCIATES, P.C., APPELLEES.
MICRO/MINI SYSTEMS, INC., DOING BUSINESS AS COMPUTERS BY MALONE, APPELLANT, V. BOYLE & ASSOCIATES, P.C., APPELLEE.

552 N.W.2d 308

Filed July 9, 1996. Nos. A–95–066, A–95–776.

Philip J. Lee for appellant.

Patrick M. Flood and Scott A. Meyerson, of Hotz & Weaver, for appellees.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

Micro/Mini Systems, Inc. (Micro), sued Michael Boyle (Boyle) and Boyle & Associates, P.C. (Boyle P.C.), for payment on a computer system and related services supplied by the former pursuant to an agreement negotiated by Boyle. On December 15, 1994, at the conclusion of Micro's case in chief, the trial court granted Boyle's motion for a directed verdict, but denied a similar motion by Boyle P.C. The court then resumed

the trial between the remaining parties, but later recessed it until February 1, 1995. The court rendered its decision, finding against Micro on its petition and against Boyle P.C. on its cross-petition on May 4. A motion for new trial was denied on June 14. In the meantime, on January 13, Micro appealed the court's action of dismissing the case as to Boyle by filing a notice of appeal (case No. A-95-066). Micro also later appealed the May 4 order (case No. A-95-776). The appeals have been consolidated.

The trial court granted Boyle a directed verdict because it concluded that any liability the defendants might have would be that of the principal, Boyle P.C. By its first appeal, Micro maintains that this finding was wrong, and by its second appeal, it maintains that the trial court did not have jurisdiction to finish the trial after the first appeal was perfected. We conclude that the evidence would support a finding that Boyle made the contract with Micro without disclosing he was an agent for Boyle P.C., or for Boyle's wife, Anne Boyle, and thus could be liable as an undisclosed agent. We also conclude that the first appeal deprived the trial court of the jurisdiction to finish the trial between the remaining parties. We therefore reverse the judgment and remand the cause in case No. A-95-066 for further proceedings, and we dismiss the appeal in case No. A-95-776 and remand the cause with directions to the district court to vacate its judgment of dismissal and to continue the trial, or commence a new trial.

Because an understanding of the facts of the case is necessary to understand our conclusion on the jurisdictional issues, we will depart from the usual order and consider the substantive question before we consider the jurisdictional questions.

## CASE NO. A-95-066: DIRECTED VERDICT
*Standard of Review.*

■ In considering an appeal from an order granting a motion for a directed verdict at the close of the plaintiff's case, an appellate court must determine whether the cause of action was proved and in so doing must consider the plaintiff's evidence as true and give the plaintiff the benefit of reasonable conclusions deducible from that evidence. *Russell v. Norton*, 229 Neb. 379,

427 N.W.2d 762 (1988); *D.S. v. United Catholic Soc. Servs.*, 227 Neb. 654, 419 N.W.2d 531 (1988). A trial court should direct a verdict, as a matter of law, only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of all inferences which can be reasonably drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Leonard v. Wilson*, 238 Neb. 1, 468 N.W.2d 604 (1991); *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988).

*Summary of Evidence.*

When considered in the light most favorable to Micro, the evidence shows as follows:

Micro is a corporation owned by John Malone and his wife. Malone personally negotiated the sale of a computer system with Boyle. During all times relevant to this case, Boyle was an attorney who practiced law through Boyle P.C. His wife, Anne Boyle, operated a collection agency called Universal Revenue. The record does not show the legal form of the organization of Universal Revenue. The law practice and the collection agency were operated in one suite of offices, and apparently the clerical work for both the law office and the collection agency was done in the same room.

During February 1992, Boyle inquired of Malone about the feasibility of replacing an existing computer system. Boyle told him "he had just acquired a company that was involved in collections and that he had a computer system that was unsatisfactory and difficult to use." After several discussions, Malone submitted two proposals to Boyle in writing. The proposal document does not contain the name of any addressee, but the body of the document contains the statements, "I want to emphasize, Mike, that . . . I believe this would make a suitable network for your use . . . . I concluded that your operation is nicely confined in its scope," and similar

statements indicating it was directed to Boyle. Malone testified that when he talked to Boyle, Boyle's responses were to the effect that " '[a]ll I need is . . . I just need . . . .' " Malone testified that he was not aware of the different corporate structures.

After several conversations between Micro employees, Boyle, Anne Boyle, and employees of Boyle P.C. and the collection agency, it was agreed that Micro would provide a computer system in accordance with one of Micro's proposals. At that time, the system was to be for the law business, but the collection agency would have access to it for its work. Part of the agreement involved designing the system so that "Anne Boyle" would have access to it.

On February 29, 1992, prior to the delivery of the hardware and services, Micro sent an invoice, exhibit 2, addressed to "Boyle & Associates" and "Mike Boyle." This invoice lists the labor, services, warranties, and hardware which Malone understood Micro was to supply, and it showed a total price of $27,667.15, $14,000 of which was for labor and programming, and the balance for hardware.

Micro delivered the hardware and began installing and programming the new computer system sometime in March. Problems developed. Boyle P.C.'s Wang computer system "crashed" before the information on it could be transferred to the new system, and this necessitated additional hours of programming. In addition, problems developed in adapting the system so it could be used by the collection agency. Malone testified that the nature of the agreement broadened, and the majority of the work focused on running the day–to–day operations of the collection agency. Micro's evidence would establish that at least by August, if not before, Micro knew the collection agency was operated by Anne Boyle. There is no evidence to establish the owner or the legal organization of the collection agency that was operated under the name Universal Revenue, or Universal Revenue Service, and at some time, Uni–Phy. Micro's evidence is to the effect that the problems of making the computer system available to the collection agency led to cost overruns and delays.

On June 12, Malone wrote a letter to Boyle addressed to "Mike Boyle" and "Boyle & Associates," and on the same date, Micro sent another invoice addressed to "Boyle & Associates" and "Mike Boyle." On a Monday in June, Malone told Boyle to pay, or he would not get his computer back, because at that time, Boyle had made only his initial payment, and that payment was less than the agreed–upon 25 percent. Malone testified that Boyle always discussed payments in terms of "Anne and I." At one point, Boyle told Malone that he and Anne Boyle were having financial trouble and needed to be able to pay the balance in three monthly payments. Malone told him he understood and told him he could pay the amount in four monthly payments. On June 15, Edward Malone, who was a business manager for Micro, and Boyle had a meeting in Edward Malone's office. Boyle gave Edward Malone a payment of $6,000 and a handwritten note stating, "I will talk to Ed about paying off the balance if I am able to arrange financing . . . ." The document is signed "Boyle & Associates, P.C. by Mike Boyle."

On August 24, 1992, Edward Malone received a faxed memorandum from Boyle which outlined all of the problems that Boyle's companies were experiencing with the computer system. The cover sheet has "Boyle & Associates, P.C." on it, and the memorandum states, "FROM: Michael BoyLe [sic]." This is the second time the record shows the use of "P.C." in connection with Boyle & Associates.

Obviously, the parties had disputes about payment by Boyle or Boyle P.C. of the balance due and about counterdemands by the defendants. These issues will not be summarized because they are beyond the issues of this appeal. The evidence would establish that a great deal of extra work, service, and equipment was supplied and that much of it was for the collection agency.

Micro alleges that after payment of $22,000, Boyle and Boyle P.C. owe a balance of $29,185.

*Discussion.*

After Micro rested, the defendants moved for directed verdict. The court stated, "There's an excellent reason why . . . we incorporate and that is to save ourselves from personal

liability. And — I can only assume, I guess, that's why Mr. Boyle did it." The court then dismissed the action as to Boyle personally, finding that there was no testimony that Boyle personally obligated himself.

Micro argues at the outset that there is no evidence regarding the fact that Boyle & Associates is a professional corporation. However, Micro's petition alleges that "Boyle & Associates, P.C. is believed to be a Nebraska Professional Corporation," and in their answer, the defendants admit this allegation. Thus, this fact is deemed admitted. There is no similar allegation about Universal Revenue.

Nebraska courts recognize the general rule that an agent, acting for a disclosed principal, is not ordinarily liable for the principal's contract. *Purbaugh v. Jurgensmeier*, 240 Neb. 679, 483 N.W.2d 757 (1992); *McGowan Grain v. Sanburg*, 225 Neb. 129, 403 N.W.2d 340 (1987). It is a fundamental rule that an agent who contracts on behalf of a disclosed principal, in the absence of some other agreement to the contrary or other circumstances showing that the agent has expressly or impliedly incurred or intended to incur personal responsibility, is not liable to the other contracting party. *Purbaugh, supra*; *Cargill Leasing Corp. v. Mueller*, 214 Neb. 569, 335 N.W.2d 277 (1983); *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 302 N.W.2d 655 (1981). In *Purbaugh, supra*, the court cited the following proposition from 19 C.J.S. *Corporations* § 540 at 169 (1990) with approval: "[I]t is the agent's duty to disclose his capacity as agent of a corporation if he is to escape personal liability for contracts made by him, and the agent bears the burden of proof of showing that he was purchasing in his corporate, not individual, capacity."

The record shows that by sometime in early March 1992, John Malone and Boyle agreed that Micro would sell a computer system to Boyle, and Micro commenced delivery of the system. The contract was necessarily made by that time. Micro's evidence shows that its officials knew that Boyle did business under the name of "Boyle & Associates." There is no evidence that at the time delivery was commenced, any Micro official had any notice that Boyle & Associates was a professional corporation. The Legislature has provided in Neb.

Rev. Stat. § 21–2206 (Reissue 1991) that a professional corporation shall have the words "professional corporation" or "P.C." as part of its name. With regard to Universal Revenue, Neb. Rev. Stat. § 21–2007 (Reissue 1991) requires a corporation to have in its name the word "corporation, company, incorporated, or limited, or . . . an abbreviation of one of such words." The reason for these statutes is obvious.

However, even if Boyle P.C. had used the appropriate corporate name, it is doubtful that Boyle could avoid personal liability as a matter of law in the face of the various statements he made to Malone, as summarized above, because these statements certainly indicate his personal interest rather than representation of a corporate interest. The evidence shows that in June and August, Micro supplied many extra services to make the computer system accessible and useable by the collection agency. Boyle's statement that he had recently acquired a collection agency, the initial requirement that the system was to be accessible and useable by the collection agency, and the fact that he never objected to being billed for services supplied to the collection agency upon the request of Anne Boyle would at least prevent a directed verdict on the issue of Boyle's liability for services that might have been supplied to the collection agency as opposed to the law practice. In addition, the evidence is clear that Boyle negotiated for at least some services for the collection agency. His wife was present at least at some of the negotiations in February and March, but there is no evidence that they gave any indication that Boyle was not the owner of the collection agency. We therefore conclude that the trial court erred in granting the motion for a directed verdict and dismissing Boyle as a defendant.

## JURISDICTIONAL QUESTIONS

*Standard of Review.*

■ When no factual dispute is involved, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's conclusion on the issue. *Jones v. State*, 248 Neb. 158, 532 N.W.2d 636 (1995); *K N Energy, Inc. v. Cities of Broken*

*Bow et al.*, 248 Neb. 112, 532 N.W.2d 32 (1995); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

■ While none of the parties raise the issue of whether the order in case No. A–95–066 is a final, appealable order, the issue of subject matter jurisdiction may be raised sua sponte by an appellate court. *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994); *In re Interest of Kelly D.*, 3 Neb. App. 251, 526 N.W.2d 439 (1994). When a lower court lacks power, that is, subject matter jurisdiction, to adjudicate merits of a claim, issue, or question, an appellate court also lacks power to determine the merits of the claim, issue, or question presented to the lower court. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994); *Knerr v. Swigerd*, 243 Neb. 591, 500 N.W.2d 839 (1993); *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986); *Glup v. City of Omaha*, 222 Neb. 355, 383 N.W.2d 773 (1986). However, although an extrajurisdictional act of a lower court cannot vest an appellate court with jurisdiction to review or evaluate an evidentiary determination involved in such act, an appellate court has jurisdiction and, moreover, the duty to determine whether the lower court had the power to enter the judgment or final order sought to be reviewed. *In re Interest of J.T.B. and H.J.T., supra*; *In re Interest of L.D. et al., supra*.

*Discussion.*

The posture of these appeals raises two jurisdictional questions: One, is the order dismissing the case as to Boyle during the middle of the trial appealable? Two, if the answer to that question is in the affirmative, does the appeal by Micro on the claim against Boyle divest the district court of jurisdiction to hear and determine the remainder of the case between Micro and Boyle P.C.?

We note that the jurisdictional problems in this case cannot arise in the federal courts or the states that follow the Federal Rules of Civil Procedure, because rule 54(b) provides:

> [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express

determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The rule goes on to provide that in the absence of such a determination, an order is not final as to any of the parties.

Neb. Rev. Stat. § 25-1911 (Reissue 1995) provides in part that "[a] judgment rendered or final order made by the district court may be reversed, vacated, or modified," and under Neb. Rev. Stat. § 25-1902 (Reissue 1995), a judgment dismissing Boyle as a defendant would surely be a final order. Under Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 1994), the appeal must be perfected "within thirty days after the rendition of such judgment or decree or the making of such final order." These statutes are clear and do not contemplate the problems provided for in rule 54 of the Federal Rules of Civil Procedure.

Micro relies upon *Green v. Village of Terrytown*, 188 Neb. 840, 199 N.W.2d 610 (1972) (*Green I*). In *Green I*, the Nebraska Supreme Court held that an order granting a summary judgment dismissing one defendant from the case was appealable and that the plaintiff, who failed to appeal from that order within 30 days, lost its right to appeal. In so holding, the court reasoned as follows:

> [A] paramount consideration is to be liberal in permitting appeals, but, on the other hand . . . piecemeal or successive appeals are not desirable. It would appear there is a further consideration, namely that where there are multiple defendants and the action is dismissed as to one defendant, that defendant no longer has a voice in the determination of the litigation and if the remaining parties permit the litigation to drag on for months or years, he has no way of bringing an end to the litigation or ascertaining whether or not it has been finally determined as to him. This is a very important consideration in determining whether or not such an order of dismissal is a "final order."

*Id.* at 841, 199 N.W.2d at 611. See, also, *Maurer v. Harper*, 207 Neb. 655, 300 N.W.2d 191 (1981).

The only distinction between *Green I* and this case is that Green's action against Terrytown was dismissed by a motion for summary judgment (see *Green v. Village of Terrytown*, 189

Neb. 615, 204 N.W.2d 152 (1973) (*Green II*)), whereas the action against Boyle was dismissed during the trial. We have been unable to find any case which considers the rights of appeal as to a defendant dismissed during trial. We realize that in the usual case, a trial will be concluded before a plaintiff must file a notice of appeal as to any defendant dismissed during trial, and that a plaintiff could effectively terminate a jury trial by quickly appealing the dismissal of one defendant. However, such an action by the plaintiff carries with it the sanction of delaying the plaintiff's relief from the other defendants, and a plaintiff, in the position Micro found itself in, can seek to avoid the problem by filing a motion for new trial. We conclude that the rationale for the rule announced in *Green I* is applicable to the appeal in case No. A–95–066, and when a party defendant is dismissed during trial, the order of dismissal is appealable.

Micro contends that the trial court did not have jurisdiction over the issues in case No. A–95–776 because it was divested of its jurisdiction when Micro appealed in case No. A–95–066. Boyle P.C. relies upon 4 Am. Jur. 2d *Appellate Review* § 220 (1995) and the cases *Lane v. Messer*, 689 P.2d 1333 (Utah 1984), and *State ex rel Gattman v. Abraham*, 302 Or. 301, 729 P.2d 560 (1986), for the proposition that when an appeal is taken from a final judgment as to fewer than all parties, the remainder of the action in the trial court is not affected. However, the cases themselves show that the statutory rules of both forums are substantially similar to Fed. R. Civ. P. 54(b). Furthermore, in *Lane, supra*, the appeal was from the granting of a motion for summary judgment to a defendant, not an appeal from a directed verdict entered during trial, and *Lane* is thus clearly in conflict with *Green I*.

Section 25–1912(3) provides in significant part: "[A]n appeal shall be deemed perfected and the appellate court shall have jurisdiction of the cause when such notice of appeal has been filed and such docket fee deposited . . . ." Insofar as we can find, Nebraska cases have consistently held "lower courts are divested of subject matter jurisdiction over a particular case when an appeal of that case is perfected." *Flora v. Escudero*, 247 Neb. 260, 264, 526 N.W.2d 643, 646 (1995). The Supreme

Court recently held that the district court was without jurisdiction to award attorney fees while an opinion was pending. *WBE Co. v. Papio–Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995). In *Swain Constr. v. Ready Mixed Concrete Co.*, ante p. 316, 542 N.W.2d 706 (1996), Judge Miller–Lerman reviewed the Nebraska cases and concluded the rule is that after an appeal is perfected, the trial court is divested of jurisdiction over the case until the appeal is concluded. Additionally, "[a]ny order made by the district court after the vesting of jurisdiction in the Supreme Court is void and of no effect. The district court lost jurisdiction the instant the appeal was perfected." *Nuttleman v. Julch*, 228 Neb. 750, 756, 424 N.W.2d 333, 338 (1988) (holding district court was without authority to dismiss defendants' counterclaims after plaintiff perfected her appeal as to earlier dismissal of plaintiff's ejectment petition).

We conclude that the trial court lost its jurisdiction upon Micro's appeal on January 13, 1995, and after that date it was without jurisdiction to enter the order dismissing Micro's action against Boyle P.C.

## CONCLUSION

We conclude that the order dismissing Boyle during trial is a final, appealable order which was properly appealed. With regard to such appeal, we conclude that the trial court erred in directing a verdict in favor of Boyle. Additionally, as a result of this appeal, we conclude that the trial court was divested of jurisdiction, that the order dismissing Boyle P.C. subsequent to the first appeal was void, and that this court lacked jurisdiction to hear the merits of that appeal. We direct the trial court to vacate its order of dismissal and to continue the trial, or commence a new one.

JUDGMENT IN NO. A–95–066 REVERSED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.

APPEAL IN NO. A–95–776 DISMISSED, AND CAUSE REMANDED WITH DIRECTIONS.