780 L.L.C., A NEBRASKA LIMITED LIABILITY COMPANY, APPELLEE, v. JAMES C. DIPRIMA, APPELLANT.
611 N.W.2d 637

Filed June 6, 2000. No. A-99-497.

John C. Wieland and C.G. Jolly, of Frazier, Wieland, Bataillon & Katz, for appellant.

Ann M. Grottveit and Donald J. Buresh, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellee.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

James C. DiPrima appeals a judgment of the district court for Douglas County in favor of 780 L.L.C., a Nebraska limited liability company. The district court concluded that 780 L.L.C. was entitled to enforce a guaranty against DiPrima individually in the amount of $17,980.54. On appeal, DiPrima contends that the district court erred in admitting parol evidence to determine the capacity in which he signed the guaranty, in finding that he signed the guaranty in his personal capacity, in determining his liability to be for 6 months' rent, in failing to find that a subsequent guaranty of a David Dunn did not release him from all obligations under his guaranty, and in failing to fix his maximum personal liability under the guaranty to $4,056. For the reasons stated below, we affirm.

## II. FACTUAL BACKGROUND

In August 1993, DiPrima was president of M.B.D. Midwest, Inc., a company seeking to set up Mail Boxes Etc. stores in Nebraska. DiPrima began negotiating with Rick Lee Scott, a listing agent for Miracle Hills Partnership, to lease some commercial property in Omaha for a Mail Boxes Etc. store. We note from the record that since the events relevant to this lawsuit, Miracle Hills Partnership has changed the nature of its organizational structure from a partnership to a limited liability company and is now doing business as 780 L.L.C. as evidenced in the record by an "Agreement of Merger."

On August 23, 1993, M.B.D. Midwest and Miracle Hills Partnership executed a lease for the property. A document entitled "Personal Guarantee" was also executed. In relevant part, it reads:

### PERSONAL GUARANTEE

The undersigned hereby unconditionally guarantee unto the Landlord the payment of the rent and the performance of all of the covenants under the Lease by the Tenant and hereby waive notice of any default under the Lease and agree that this liability shall not be released or affected by an extension of time for payment or by any forbearance by the Landlord. The undersigned's liability shall not exceed

an amount equal to the sum of the following six months total rents.

Dated This 30 day of Aug, 19993 [sic]
By: James C. DiPrima Pres [signature in space provided]
MBD MiDWEST [handwritten in space provided]
Name
14627 INDUSTRIAL RD [handwritten in space provided]
Street Address
OMAHA NE [handwritten in space provided]
City/State/Zip

In January or February 1994, M.B.D. Midwest took possession of the property under the lease and began to pay rent. DiPrima had left his employment with M.B.D. Midwest in November 1993. It appears that at some point, Miracle Hills Partnership obtained a guaranty of some kind from Dunn, because "DiPrima left the company and someone else took his place." M.B.D. Midwest continued to pay rent until March 1997 and then vacated the premises 3 or 4 months later. According to the managing partner of Miracle Hills Partnership, the balance due from M.B.D. Midwest under the lease is $20,261.26 for the period from March 26 to September 30, 1997.

On June 9, 1997, 780 L.L.C. initiated a lawsuit against DiPrima and Dunn. In its amended petition, which is the operative petition in this case, 780 L.L.C. named only DiPrima as a defendant. In its amended petition, 780 L.L.C. alleged that M.B.D. Midwest was in default under the lease for failing to make lease payments in April, May, and June 1997 and that DiPrima was liable for the default in lease payments by M.B.D. Midwest pursuant to his "personal guarantee" of the obligations of M.B.D. Midwest under M.B.D. Midwest's lease with Miracle Hills Partnership. 780 L.L.C. prayed for judgment against DiPrima in the amount of $59,203.

On January 20, 1999, a trial was held on the amended petition. At trial, parol evidence regarding discussions between DiPrima and Scott that occurred prior to the execution of the guaranty at issue was admitted without objection. This evidence will be set forth in the analysis section below. After hearing the evidence, the district court entered judgment in favor of 780 L.L.C. and against DiPrima in the amount of $17,980.54 plus

costs. It is clear from the order that the district court considered the parol evidence. From this order, DiPrima timely appealed.

## III. ASSIGNMENTS OF ERROR

For DiPrima's assignments of error, he contends that the district court erred in admitting parol evidence to determine the capacity in which he signed the guaranty, in finding that he signed the guaranty in his personal capacity, in determining his liability to be for 6 months' rent, in failing to find that a subsequent guaranty of Dunn did not release him from all obligations under his guaranty, and in failing to fix his maximum personal liability under the guaranty to $4,056.

## IV. ANALYSIS

### 1. ADMISSION OF PAROL EVIDENCE

(a) Waiver of Objection to Parol Evidence

DiPrima first assigns that the district court erred in admitting parol evidence regarding the discussions between Scott and DiPrima prior to the execution of the guaranty at issue. 780 L.L.C. argues that DiPrima waived any objection to the receipt of such evidence when he failed to object to its admission at trial. We disagree.

It is true that the general evidentiary rule is that the failure to make a timely objection waives the right to assert prejudicial error on appeal. *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997); *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997). However, in *Perry v. Gross*, 155 Neb. 662, 665, 53 N.W.2d 73, 76 (1952), the Nebraska Supreme Court recognized that

> the parol evidence rule is not merely one of evidence. It is one of substantive law as well. As a rule of substantive law it renders ineffective proof of an oral prior or contemporaneous agreement the effect of which would be to vary, alter, or contradict the terms of a written agreement. The admission of evidence without objection in proof of an oral agreement which is in violation of the parol evidence rule furnishes no basis for enforcement of the oral agreement.

We recognize that in *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995), the Supreme Court concluded that the fail-

ure to object to the admission of certain parol evidence resulted in the waiver of the right to raise any alleged error regarding its admission on appeal. However, in *Barks*, the Supreme Court neither addressed nor overruled *Perry, supra.* We note that the rule in *Perry* is consistent with the holdings in a majority of other states which have addressed this issue. See, e.g., *Brewer v. Devore*, 960 S.W.2d 519 (Mo. App. 1998); *Penton v. J.F. Cleckley & Co.*, 326 S.C. 275, 486 S.E.2d 742 (1997); *State Nat. Bank v. Academia, Inc.*, 802 S.W.2d 282 (Tex. App. 1990); *Magnetic Copy Servs. v. Seismic Specialists*, 805 P.2d 1161 (Colo. App. 1990); *Howell Mill/Collier Assoc. v. Pennypacker's*, 194 Ga. App. 169, 390 S.E.2d 257 (1990); *Matter of Estate of Kalouse*, 282 N.W.2d 98 (Iowa 1979).

We apply the rule in *Perry* to the case before us. As a matter of substantive law, a party's failure to object to the admission of parol evidence does not waive the proper application of the parol evidence rule. We stress that the better practice is to object to parol evidence at trial. We conclude that DiPrima did not waive his right to challenge the use of the parol evidence to vary the writing because of his failure to object to the admission of the parol evidence at trial. We therefore consider the merits of DiPrima's assertion that the parol evidence was improperly received and used by the trial court.

### (b) Ambiguity of Guaranty

We first note that a contract may not be modified through the use of parol evidence unless the contract is shown to be ambiguous. Therefore, in order to determine whether the parol evidence was properly admitted in the present case, we must address whether the guaranty was ambiguous. We note that a guaranty is a type of contract by which a guarantor promises to make payment if the principal debtor defaults. *Northern Bank v. Dowd*, 252 Neb. 352, 562 N.W.2d 378 (1997). A guaranty is interpreted using the same general rules as are used for other contracts. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

When parties have executed a completely integrated written document purporting to express the terms of their agreement, the parol evidence rule renders ineffective any evidence of a prior or contemporaneous oral agreement which adds to,

alters, varies, or contradicts the terms of the written document. *Rowe v. Allely*, 244 Neb. 484, 507 N.W.2d 293 (1993); *Five Points Bank v. White*, 231 Neb. 568, 437 N.W.2d 460 (1989). Where negotiations between parties result in an agreement which is reduced to writing, the written agreement is the only competent evidence of the contract in the absence of fraud, mistake, or ambiguity. *Rowe, supra*; *Silverman v. Arbor Street Partnership*, 213 Neb. 628, 330 N.W.2d 904 (1983).

 A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings, *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994), or where the language employed is vague or ambiguous, *Coppi v. West Am. Ins. Co.*, 247 Neb. 1, 524 N.W.2d 804 (1994). Whether a contract is ambiguous is a question of law. *Union Ins. Co. v. Land and Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773 (1995). As to questions of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *Lackman v. Rousselle*, 257 Neb. 87, 596 N.W.2d 15 (1999); *Nelson v. City of Omaha*, 256 Neb. 303, 589 N.W.2d 522 (1999).

 We note that the body of the document does not indicate whether the guaranty was to be that of DiPrima or of M.B.D. Midwest. However, the document is entitled "Personal Guarantee," which suggests that it is a guaranty of an individual signing on his or her own behalf. Based upon our research, we conclude that the title of a document is not controlling as to its legal effect. See *Columbia Club v. American Fletcher Realty*, 720 N.E.2d 411 (Ind. App. 1999); *Wayne J. Griffin Elec. v. Dunn Const.*, 622 So. 2d 314 (Ala. 1993); *Howard v. FMC Corp.*, 98 Idaho 465, 567 P.2d 10 (1977); *St. Germain & Son, Inc. v. Taunton Redevelop. Auth.*, 4 Mass. App. 46, 340 N.E.2d 916 (1976).

> [T]he designation that a party gives to an instrument, i.e., the title of a document or the caption of a provision, does not alter the meaning of the contents of the document—it does not control the interpretation or construction of the document, the legal effect of the document, or the relationship of the parties; and it does not determine the nature or

character of the document. . . . Rather, the written instrument must be construed in its entirety—single provisions or sentences are not to be disassociated from others referring to the same subject matter.

(Citation omitted.) *Wayne J. Griffin Elec.*, 622 So. 2d at 317. The above propositions are consistent with Nebraska jurisprudence which provides that a contract is to be construed as a whole, and if possible, effect is to be given to every part of the contract. See *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998). Therefore, in the instant case, we determine that the fact that the document is entitled "Personal Guarantee" is not controlling, but may be considered along with the rest of the language in the document.

Additionally, it appears that DiPrima signed the document in a manner suggesting that he was attempting to bind the corporation only: The signature lines suggest that DiPrima named M.B.D. Midwest as the entity executing the document with DiPrima signing on its behalf. We must determine the effect, if any, of the manner of his signature.

In order to exempt an agent from liability upon an instrument executed by the agent within the scope of the agent's agency, the agent must not only name his or her principal, but must express by some form of words that the writing is the act of the principal, though done by the hand of the agent. If the agent expresses this, the principal is bound and the agent is not. *Lincoln Equipment Co. v. Eveland*, 173 Neb. 174, 112 N.W.2d 755 (1962). An agent who contracts on behalf of a disclosed principal in the absence of some other agreement to the contrary or other circumstances showing that the agent has expressly or impliedly incurred or intended to incur personal responsibility is not liable to the other contracting party. *Purbaugh v. Jurgensmeier*, 240 Neb. 679, 483 N.W.2d 757 (1992); *Micro/Mini Systems, Inc. v. Boyle*, 4 Neb. App. 841, 552 N.W.2d 302 (1996). It is the agent's duty to disclose his or her capacity as agent of a corporation, and the agent bears the burden of proof of showing that he or she was acting in his or her corporate, not individual, capacity. *Id.*

Regarding the effect of form of a signature by an agent, it is generally understood that in "the absence of a contrary manifes-

tation in the document, the following signatures and descriptions, among others, create an inference that the principal and not the agent is a party: The principal's name followed by the agent's name preceded by a preposition such as 'by' or 'per.' " Restatement (Second) of Agency § 156 at 372 (1958). See, also, 3 Am. Jur. 2d *Agency* § 171 (1986). Accordingly, the manner of DiPrima's signature creates an inference that he signed the document on behalf of the corporation and not in his individual capacity.

Construing the document in its entirety, we conclude as a matter of law that it is inconsistent and, therefore, ambiguous. The title on the document is inconsistent with the manner in which DiPrima signed the document. The title of the document suggests it is a guaranty by DiPrima individually. The manner in which it is signed suggests it is a guaranty of M.B.D. Midwest. Such an inconsistency creates an ambiguity which permits the admission of parol evidence to explain the true intent of the parties. Therefore, we conclude that the district court properly admitted and used the parol evidence.

## 2. EFFECT OF GUARANTY

Next, DiPrima assigns that the district court erred in concluding that the guaranty was a personal guaranty binding DiPrima in his individual capacity. The court stated:

> While it is clear that [DiPrima] was attempting to limit his personal liability he has not contradicted the evidence regarding the requirement by the lessor of a personal guarantee [sic] except in his deposition and, therefore, despite identifying himself as signing on behalf of the corporation the Court finds that the intent of the parties was for the guaranty to be personal. To find otherwise would defeat the purpose of the execution and delivery of the guaranty document.

If a contract is ambiguous, the meaning of the contract is a question of fact, and a court may consider extrinsic evidence to determine the meaning of the contract. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). See, also, *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994). In a bench trial of a law action, a

trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Tipp-It, Inc. v. Conboy*, 257 Neb. 219, 596 N.W.2d 304 (1999); *Hilliard v. Robertson*, 253 Neb. 232, 570 N.W.2d 180 (1997).

Based upon our review of the record, the parol evidence shows as follows: Scott, the listing agent for Miracle Hills Partnership, testified that when the managing partner of Miracle Hills Partnership requested a "personal guaranty," DiPrima did not have a problem with that. In DiPrima's deposition, DiPrima denied that he had signed the guaranty personally. In recapping his discussion with the listing agency, DiPrima stated:

> At the beginning, I told Mr. Scott that none of these leases that I was negotiating had personal guarantees. He [later] indicated we had to have a guarantee. And I told him I didn't want to do a guarantee. He said, "Well, what if we guarantee it for a period of time," and I said, "Well, what period of time." And he said, "Six months," and I said "Okay."

Based upon our review of the record, we conclude that the district court was not clearly wrong in finding that it was the intention of the parties that the guaranty be a personal guaranty. We note that such a conclusion is consistent with the parol evidence and provides a reasonable interpretation of the guaranty. To conclude that the guaranty was that of the corporation would render its effect fairly meaningless, because the corporation was already liable based on its lease agreement. See, *Home Federal Sav. & Loan Ass'n v. Ramos*, 229 Cal. App. 3d 1609, 284 Cal. Rptr. 1 (1991); *McKesson Chemical Co. v. Tideland Chemical*, 471 So. 2d 812 (La. App. 1985) (concluding that guaranty of corporation's debt was that of agent and not that of corporation because guaranty should not be interpreted in way that would render its effect worthless or nullity).

### 3. RELEASE OF GUARANTY

DiPrima also assigns that the district court erred in failing to find that a later guaranty executed by Dunn released DiPrima of any liability under his guaranty. We note that this subsequent guaranty is not in the record before us. As a result, we cannot know the terms of such guaranty.

 Generally, the fact that a creditor may take additional security to insure payment of a principal obligation does not release or discharge the guarantor. 38 Am. Jur. 2d *Guaranty* § 87 (1999); 38A C.J.S. *Guaranty* § 95 (1996). When the additional security taken by the creditor is a new guaranty, the prior guaranty is not extinguished by the execution of the subsequent guaranty "unless the subsequent guaranty was executed as a substitute for the earlier one." 38 Am. Jur. 2d, *supra*, § 87 at 948. See, also, 38A C.J.S., *supra*.

We cannot conclude on the evidence presented that the Dunn guaranty was executed as a substitute for DiPrima's guaranty. DiPrima's guaranty does not provide that DiPrima is released or discharged of liability if another guaranty is executed to secure M.B.D. Midwest's rental payments. According to the evidence, the later guaranty was obtained because "DiPrima left the company and someone else took his place." Such evidence is insufficient to support a conclusion that the later guaranty was a substitute for DiPrima's guaranty and that the later guaranty was intended to release DiPrima of his liability under his guaranty. Therefore, we conclude that the district court did not err in concluding that the later guaranty did not release DiPrima of his obligation under his guaranty.

#### 4. Amount of Liability

Finally, DiPrima assigns that the district court erred in finding that he was liable for the payment of 6 months' rent and in failing to fix his liability at $4,056. DiPrima argues that based on the language of the guaranty, he was only guarantying the payment of rent by M.B.D. Midwest for the 6 months following the execution of the guaranty, that the total amount of rent paid in that 6-month period was $4,056, and that therefore, $4,056 was the maximum amount of his liability.

 It is axiomatic that the words of a contract must be given their plain and ordinary meaning. *Snowden Farms v. Jones*, 8 Neb. App. 445, 595 N.W.2d 270 (1999). The guaranty provides that DiPrima guarantees the payment of the rent by M.B.D. Midwest and that his "liability shall not exceed an amount equal to the sum of the following six months [sic] total rents." DiPrima's above interpretation of the guaranty is strained at

best. The plain and ordinary meaning of the above language limits DiPrima's liability to the amount of the 6 months' rent due following any default by M.B.D. Midwest. Therefore, we conclude that the district court properly found DiPrima liable for 6 months' rent.

### V. CONCLUSION

In conclusion, the guaranty executed by DiPrima was ambiguous as a matter of law. Therefore, the district court did not err in admitting parol evidence to determine the intention of the parties. The district court was not clearly wrong in finding that it was the intent of the parties that the guaranty was a personal guaranty of DiPrima rather than a guaranty of the corporation. The district court also did not err in concluding that the later guaranty did not release DiPrima of liability under his guaranty. We further conclude that DiPrima's liability under the guaranty was not limited to $4,056. For these reasons, we affirm.

AFFIRMED.