693 N.W.2d 901 (2005)
13 Neb. App. 392
In re Interest of DEVIN W. et al., children under 18 years of age.
State of Nebraska, appellee and cross-appellee,
v.
Lerry M., appellant, and Jillian M., appellee and cross-appellant.
No. A-04-250.
Court of Appeals of Nebraska.
March 8, 2005.
*902 Dennis R. Keefe, Lancaster County Public Defender, and Reggie L. Ryder for appellant.
Daniel Packard, Deputy Lancaster County Attorney, and Julie Agena, Senior Certified Law Student, for appellee State of Nebraska.
Lisa F. Lozano, Lincoln, for appellee Jillian M.
IRWIN, MOORE, and CASSEL, Judges.
MOORE, Judge.

INTRODUCTION
Lerry M. appeals and Jillian M. cross-appeals from the order of the separate juvenile court of Lancaster County requiring the removal of their child Jesse M. from the family home. For the reasons set forth herein, we reverse the orders of the juvenile court, or the portions thereof, pertaining to Jesse and remand the cause with directions to dismiss the proceeding.

BACKGROUND
Lerry and Jillian are the natural parents of Jesse, born May 25, 2001. The present juvenile action arose out of proceedings brought in relation to Jesse's older brother and half brother. Lerry and Jillian are also the natural parents of Brien M., born *903 June 4, 1998. Jillian is the natural mother of Devin W., born November 4, 1996. James W., Devin's natural father, did not reside in Nebraska, and his parental rights with respect to Devin were eventually terminated.
The State filed a juvenile petition on March 9, 2001, in the interest of Devin and Brien. The State alleged that Devin and Brien lacked proper parental care due to the fault or habits of Jillian in that on or after February 18, 2001, Jillian subjected Devin to inappropriate physical discipline resulting in physical injury to Devin. The State further alleged that Jillian's actions placed both Devin and Brien at risk of harm. The State made no allegations concerning either Lerry or James.
An adjudication hearing was held on March 26, 2001, and continued to April 12. Jillian admitted the allegations in the petition, which admission was accepted by the court. The court found Devin and Brien to be children as defined by Neb.Rev.Stat. § 43-247(3)(a) (Cum.Supp.2002).
On May 25, 2001, the day Jesse was born to Lerry and Jillian, the State filed a supplemental petition, alleging that Jesse lacked proper parental care by reason of the fault or habits of Jillian in that she had previously subjected Devin to inappropriate physical discipline, which act resulted in the filing of a juvenile court petition and Devin's adjudication, and that she had not corrected the conditions that served as the basis for that prior adjudication. The State alleged that this situation placed Jesse at risk of harm. The State made no allegations against Lerry in the supplemental petition.
On June 1, 2001, a dispositional hearing was held on the original petition and a rehabilitative plan was put into effect, which plan included the removal of Devin and Brien from the home of Lerry and Jillian. Devin and Brien were placed in foster care, and the court ordered reasonable visitation with Lerry and Jillian as arranged by the Department of Health and Human Services (the Department).
An adjudication hearing on the supplemental petition and a review hearing on the original petition were held on July 23, 2001. The juvenile court found that the allegations of the supplemental petition were true by a preponderance of the evidence and found Jesse to be a child as defined by § 43-247(3)(a). The court scheduled the supplemental petition for disposition and ordered the Department to prepare a case plan.
On October 22, 2001, a dispositional hearing on the supplemental petition and a review hearing on the original petition were held. The juvenile court found that the health and safety of Devin and Brien required their continued removal from the family home and that it was in their best interests to remain in an out-of-home placement. The court found that fair progress had been made to alleviate the causes for the out-of-home placement and noted the target date for the primary permanency plan of reunification, which was June 2002. As to Jesse, the court found it in Jesse's best interests that he remain in the temporary legal custody of the Department and in the physical care of Jillian. The court ordered Jillian to participate in and cooperate with various services and not to use physical discipline on Devin, Brien, or Jesse or allow any other individual to do so. The court ordered Lerry and Jillian to keep all scheduled appointments with the caseworker and other support providers. The court ordered supervised visitation for Jillian with Devin and Brien and provided for separate, unsupervised visitation by Lerry if Lerry so requested. Review hearings were held on January 8, February 7, and May 7, 2002. Following each hearing, the *904 juvenile court found it in the best interests of Jesse that he remain in the temporary legal custody of the Department but in the physical care of Jillian. The court continued Devin and Brien's out-of-home placement, with supervised visitation by Jillian, and again provided for separate, unsupervised visitation by Lerry if Lerry so requested. After each of these hearings, the court found that good progress had been made to alleviate the causes of the out-of-home placement of Devin and Brien.
The State filed a second supplemental petition on September 5, 2002. In count I of the petition, the State alleged that Devin and Brien lacked proper parental care due to the fault or habits of Lerry in that between February 8 and August 29, 2002, Lerry failed to have regular or consistent visitation or contact with Devin and Brien or failed to provide emotional care or support to them, placing them at risk of emotional harm. The State alleged in count II of the petition that between May 29, 2001, and August 29, 2002, (1) Devin and Brien had been removed from the family home and placed in the temporary legal custody of the Department, (2) Devin and Brien had been residing in foster care, (3) Lerry had knowledge of Devin and Brien's placement, and (4) Lerry failed to provide proper care, supervision, shelter, or support for Devin and Brien, placing them at risk of emotional harm. The State made no allegations in the second supplemental petition concerning Jesse.
A hearing was held on October 2, 2002, concerning all three petitions. With regard to the adjudication made in the second supplemental petition, Lerry entered a denial of the allegations therein, and the court set the second supplemental petition for formal hearing. With regard to its review of the original petition and supplemental petition, the court made findings similar to those made following the previous review hearings. However, the court found that while services had been provided in compliance with the case plan, poor progress had been made to alleviate the causes of the out-of-home placement of Devin and Brien. The primary permanency plan for Devin and Brien remained one of reunification, with a new target date of February 2003.
On December 17, 2002, Lerry pled no contest to count II of the second supplemental petition. Count I was dismissed. The juvenile court found that Devin and Brien were children as defined by § 43-247(3)(a) in that they lacked proper parental care through the fault or habits of Lerry. The court also conducted a review of the petition and supplemental petition and made findings similar to those made following the October 2 hearing.
On January 23, 2003, a review hearing was held on the petition and supplemental petition and a disposition hearing was held on the second supplemental petition. The court found it in the best interests of Jesse for the Department to retain his temporary legal custody but found that Jesse should remain in the physical care of Jillian. The court found continued out-of-home placement to be in Devin's and Brien's best interests. The court ordered Lerry and Jillian to keep all scheduled appointments with the caseworker and other service providers; actively participate in "Intensive Family Preservation" services; not use physical discipline on Devin, Brien, or Jesse or allow any other individual to do so; and obtain and maintain employment or other legal means of support to provide for themselves and the three boys. The court also ordered Jillian to participate in various forms of therapy and take all medications prescribed by her psychiatrist. The court granted Lerry and Jillian supervised visitation with Devin and Brien. Similar findings and orders were *905 made after a review hearing on March 12. The court continued to note that poor progress had been made to alleviate the causes of the out-of-home placement of Devin and Brien and noted poor progress toward alleviating the cause of adjudication as it related to Jesse.
At a review hearing on May 5, 2003, the juvenile court found it in the best interests of Jesse that he remain in the physical care of Lerry and Jillian. Devin and Brien continued in out-of-home placement. The court found that reasonable efforts had been made to return custody of Devin and Brien to Jillian but that returning said custody to Jillian would be contrary to Devin's and Brien's welfare. The court again found that poor progress had been made to alleviate the causes of the out-of-home placement of Devin and Brien and the cause of adjudication as it related to Jesse. The court established a safety plan to maintain Jesse in the physical custody of Lerry and Jillian as follows:
a. [Lerry and Jillian] shall place Jesse ... in daycare with a licensed child care provider approved by the [Department]. Jesse shall attend daycare Monday through Friday, for a minimum of six (6) hours per day.
b. [Lerry and Jillian] shall only leave Jesse ... in the care of a licensed child care provider or other individual previously approved in advance by the case manager.
c. [Lerry and Jillian] shall ensure that any individual who provides care for Jesse ... is informed of [the safety plan] and has agreed to comply with [its] terms.
d. [Lerry and Jillian] shall follow all recommendations of [Jesse's] medical care provider, and shall ensure that Jesse attends all regularly scheduled medical appointments.
e. [Lerry and Jillian] shall allow family support workers, case managers, or the Guardian Ad Litem access to Jesse ... and to the home in which he resides, and shall be subject to unannounced drop-in visits at all reasonable hours.
f. [Lerry and Jillian] shall cooperate with a [family support worker] as arranged by the ... Department....
g. No other individual shall reside in the home of [Lerry and Jillian] without approval of the ... Department....
h. No other individuals shall be in the home with Jesse ... for extended periods of time (over 3 hours) without approval of the ... Department....
The court again ordered Lerry and Jillian to keep scheduled appointments with the caseworker and other providers, actively participate in "Intensive Family Preservation" services, not use physical discipline on the boys, and obtain and maintain employment. The safety plan requirements were again continued at the review hearing of July 15.
In May 2003, Lerry and Jillian relinquished their parental rights as to Devin and Brien. As a result of this relinquishment, and the termination of James' parental rights as to Devin in August 2003, Devin and Brien were on track to be adopted by their foster family with a target date of February 2004.
A review hearing concerning Jesse was held on January 14, 2004. The State offered exhibit 57, the case plan and court report of the caseworker, prepared January 9, 2004; exhibit 58, the report of the guardian ad litem; and exhibit 59, the court-appointed special advocate's report. Exhibit 58 was received by the court without objection. Lerry objected to the receipt of exhibits 57 and 59 on the grounds of foundation, hearsay, denial of due process, and lack of the right of confrontation. *906 Jillian joined in the objection to exhibit 57. The court received exhibits 57 and 59 over Lerry's and Jillian's objections. The court recognized that the caseworker was not present but, after verifying that she was still employed by the Department, allowed the hearing to be continued so that Lerry and Jillian could cross-examine her concerning her report. The court noted that the court-appointed special advocate was present at the hearing and could be cross-examined if the parties desired. After brief testimony by Lerry, the hearing was recessed and continued until February 3.
At the February 3, 2004, hearing, the court heard further testimony from Lerry, as well as testimony from Jillian. Lerry offered exhibits 60 and 61, which were notebooks containing reports documenting Jesse's progress in daycare, and exhibit 64, an "Intensive Family Preservation Discharge Summary" from a company providing visitation supervision and other services. These exhibits were received without objection. The guardian ad litem offered exhibit 63, an updated version of his above-mentioned report, exhibit 58. The court received exhibit 63 over Lerry's and Jillian's objections on the grounds of foundation, hearsay, and denial of due process. The State offered exhibit 62, which included a February 2 addendum to the caseworker's report. The court received exhibit 62 over Lerry's and Jillian's objections on the grounds of foundation, hearsay, denial of due process, and lack of the right of confrontation. The State called the caseworker to testify, and she was thoroughly cross-examined by both Lerry and Jillian. The court-appointed special advocate was present at the February 3 hearing, but none of the parties elicited her testimony. We set forth further details of the evidence received at the January 14 and February 3 hearings in the analysis section below as necessary to our resolution of this appeal.
At the close of the February 3, 2004, hearing, the juvenile court pronounced its ruling from the bench, finding that the evidence supported the Department's recommendation for an out-of-home placement for Jesse. The court further found that there had been reasonable efforts to maintain Jesse's placement in the parental home but that it would be contrary to his welfare for him to remain there. We note the court's comments regarding its jurisdiction over Lerry:
I would advise the parties that I feel that the Court's jurisdiction over [Lerry] is very limited. There's been no adjudication involving [Lerry] with regard to Jesse.... The petition that was adjudicated against [Lerry] involved only Devin and Brien.... But because [Jesse] is residing with [Jillian] in the family home and the evidence is that [Jillian] is the primary caretaker for [Jesse], I am approving the [D]epartment's recommendation for out-of-home placement at this time, but the parenting assessment that you've requested that the Court order of [Lerry or] any additional individual therapy I think is beyond the scope of the Court's jurisdiction at this point, given that [Lerry], with regard to Jesse, is an unadjudicated parent. The adju[dic]ation related to children that he's not a parent to and [whom] there's no plan to reunify [him] with. So with... that, I will approved [sic] the out-of-home placement at this time but not those provisions relating to [Lerry], in the absence of a further filing and adjudication thereon.
The juvenile court entered an order on February 5, 2004, setting forth its findings from the February 3 hearing. The court found it in the best interests of Jesse that he be given an out-of-home placement in licensed foster care. The court found that *907 reasonable efforts had been made to maintain Jesse's physical custody with Lerry and Jillian. The court found that it would be contrary to Jesse's welfare, health, and safety for him to remain in Lerry and Jillian's home, due to Jillian's failure to follow the court-ordered safety plan, evidence that Jesse had been exposed to cigarette smoke and excessive profanity in the family home despite his health problems and young age, Lerry's limited role in the supervision or parenting of Jesse, Jillian's failure to apply parenting skills for which extensive training had been provided, Jillian's failure to consistently participate in and make progress in her individual counseling, and the family's ongoing financial instability. Lerry subsequently perfected his appeal and Jillian her cross-appeal to this court.

ASSIGNMENTS OF ERROR
Lerry asserts, restated, that the juvenile court erred in (1) ordering Jesse's removal from Lerry and Jillian's home and (2) receiving certain exhibits into evidence. On cross-appeal, Jillian also asserts that the juvenile court erred in removing Jesse from Lerry and Jillian's home.

STANDARD OF REVIEW
A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. In re Interest of Jaden H., 263 Neb. 129, 638 N.W.2d 867 (2002). Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. Id.
Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Jac'Quez N., 266 Neb. 782, 669 N.W.2d 429 (2003). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. Id.

ANALYSIS
We must first address the issue of subject matter jurisdiction in this case as it relates to Lerry, a custodial parent against whom no allegations or accusations have been adjudicated in relation to Jesse. In considering the jurisdictional difficulties raised by this case, we turn to In re Interest of Kelly D., 3 Neb.App. 251, 526 N.W.2d 439 (1994), where a similar issue was considered.
In In re Interest of Kelly D., the parents were separated and the father had custody of their daughter. After the separation, the mother contacted authorities, confessed to having sexual thoughts about the daughter, and indicated that she was afraid of hurting the daughter. The State filed a juvenile petition alleging that the daughter was a juvenile as defined by § 43-247(3)(a) (Reissue 1993) because she lacked proper parental care due to the fault or habits of the mother. The petition listed the names of both parents and their separate addresses and was served on both parents. At the adjudication hearing, the mother admitted certain allegations of the petition and the court found that it had jurisdiction over the daughter pursuant to § 43-247(3)(a) because of the lack of proper parental care due to the faults and habits of the mother. A predispositional report recommended, among other things, that legal custody of the daughter be placed with the Department, that both parents undergo psychological testing, that the mother have supervised visitation, and that the father cooperate fully with the visitation plan arranged and directed by *908 the Department. The juvenile court disapproved this dispositional plan because the proceedings did not contain allegations or findings against the father. The juvenile court then tailored a dispositional plan to be material to the jurisdictional basis pertaining to the mother. The juvenile court did not state that the father had custody of the daughter, but the wording of the court's order assumed that the father had and would keep custody of the daughter. The Department requested a review of the dispositional order by a juvenile review panel, which panel was also concerned by the lack of proceedings or allegations against the father. The review panel ordered an adjudication to be taken against the father. Upon receipt and review of the review panel's order, the juvenile court found that the order was outside the scope of the panel's power of review and did not present a dispositional plan that could be implemented. The Department appealed from this "order" of the juvenile court and from that of the review panel. The father filed a cross-appeal from the order of the review panel, alleging that the panel erred in ordering the juvenile court to reopen the adjudication phase.
On appeal in In re Interest of Kelly D., despite the lack of an appeal from the adjudication order, this court raised the question of whether subject matter jurisdiction was present. We noted that the predispositional report recommended that the daughter's best interests would be served by taking her custody from the father and giving it to the Department. We noted that even if the Department's investigation uncovered facts indicating that the father was not capable of giving the daughter proper care, he would be entitled to an adjudication hearing to dispute the findings and to an appeal from any determination that might be made against him. We noted that the juvenile court's solution, which was to refrain from exercising full control over the father, did not resolve the jurisdictional problem. We noted that if a child is properly adjudicated under § 43-247(3)(a), then the juvenile court has jurisdiction over the custodial parent and may exercise control over that parent pursuant to § 43-247(5). We stated that if a custodial parent is going to be subject to the court's jurisdiction because that parent's child is adjudged a child under § 43-247(3)(a), then that parent should receive notice that his or her parental rights might be curtailed and receive a hearing at which to defend those rights.
Although the adjudication in In re Interest of Kelly D., 3 Neb.App. 251, 526 N.W.2d 439 (1994), was not appealed, this court noted that if the pleadings and the evidence do not justify the court's acquiring jurisdiction of a child, then the court has no jurisdiction, quoting In re Interest of D.M.B., 240 Neb. 349, 481 N.W.2d 905 (1992) (without jurisdiction, juvenile court has no power to order parent to comply with rehabilitation plan; nor does juvenile court have any power over parent or child at disposition hearing). The In re Interest of Kelly D. court found a lack of jurisdiction and ordered the proceedings dismissed, reasoning as follows:
[T]he petition contains no allegations claiming that the child lacked proper parental care by reason of the conduct of [the father], the person having custody of the child. The pleadings therefore show that [the father] was given no notice of any claim against him or of the fact that the proceeding might interfere with his constitutionally protected rights to his child.... In this case, we conclude that the petition must allege facts which would show that the child lacks proper parental care by reason of the inadequacy of any parent whose custody or right to custody might be affected, so that both parents may understand that *909 the litigation concerns their respective rights. Under the circumstances of this case, the petition is so fundamentally inadequate that it could not be the basis of the juvenile court's jurisdiction.
(Emphasis supplied.) 3 Neb.App. at 262-63, 526 N.W.2d at 447.
In Jesse's situation in the present case, as in In re Interest of Kelly D., the risk of harm to the child is posed by the mother and there have been no direct allegations of a lack of proper parental care by the father. While In re Interest of Kelly D. is distinguishable from the present case in that both Lerry and Jillian are Jesse's custodial parents and they continue to live together, the fact remains that the supplemental petition contains no allegations claiming that Jesse lacked proper parental care by reason of the conduct of Lerry, who is clearly a parent whose custody or right to custody might be affected by Jesse's adjudication.
Although there was evidence adduced at the adjudication hearing on the supplemental petition, this evidence was not made a part of the bill of exceptions. The adjudication order is silent with respect to any allegations or findings regarding Lerry or his ability or inability to provide proper parental care to Jesse. Further, the record contains no allegation or evidence that at the time of the adjudication, Lerry was unwilling or unable to protect Jesse from any threat of harm from Jillian. Given the fact that Lerry and Jillian resided together, it may indeed have been a concern that Lerry was unable to protect Jesse from harm; however, Lerry was entitled to notice and an adjudication hearing to defend against any such allegations and to an appeal from any determination which might be made against him.
As in In re Interest of Kelly D., the lack of an adjudication as to the father was a concern to the juvenile court in this case, but as we found in In re Interest of Kelly D., the court's attempt to resolve the issue in this case by refraining from ordering the father to comply with plan requirements at the time of the removal order does not resolve the jurisdictional problem.
While none of the parties in this case appealed from the adjudication order, lack of subject matter jurisdiction may be raised sua sponte by an appellate court. See In re Interest of Jaden H., 263 Neb. 129, 638 N.W.2d 867 (2002). Because of the omission of any allegations showing that Jesse lacked proper parental care by reason of the inadequacy of Lerry, a parent whose custody of Jesse or right to such custody might be affected, the supplemental petition was inadequate to form the basis of the juvenile court's jurisdiction. We conclude that the juvenile court was without jurisdiction for the adjudication of Jesse on July 23, 2001, and consequently for all the subsequent proceedings. We therefore reverse the orders of the juvenile court, or the portions thereof, pertaining to Jesse and remand the cause with directions to dismiss the proceeding.

CONCLUSION
Because the juvenile court was without jurisdiction for the adjudication of Jesse on July 23, 2001, and the subsequent proceedings, we reverse the orders of the juvenile court, or the portions thereof, pertaining to Jesse and remand the cause with directions to dismiss the proceeding.
REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.