IN RE INTEREST OF DEVIN W. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,
v. LERRY M., APPELLANT, AND JILLIAN M.,
APPELLEE AND CROSS-APPELLANT.
707 N.W.2d 758

Filed December 2, 2005.    No. S-04-250.

Dennis R. Keefe, Lancaster County Public Defender, and Reggie L. Ryder for appellant.

Gary E. Lacey, Lancaster County Attorney, Jodi L. Nelson, Kara E. Mickle, Daniel Packard, and Julie Agena, Senior Certified Law Student, for appellee State of Nebraska.

Lisa F. Lozano for appellee Jillian M.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Jesse M. is the minor son of appellant, Lerry M., and appellee and cross-appellant, Jillian M. The State filed a supplemental petition in a pending juvenile court proceeding alleging that Jesse lacked proper parental care by reason of the fault or habits of Jillian. The separate juvenile court of Lancaster County determined the allegations of the petition to be true and found Jesse to be a child as defined under Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002). At the time the juvenile court adjudicated Jesse, he resided with Lerry and Jillian. During a subsequent review hearing, the juvenile court found that it would be in the

best interests of Jesse to be removed from the physical custody of his parents and placed in out-of-home foster care. Lerry filed an appeal from the juvenile court's order removing Jesse, and Jillian filed a cross-appeal. In a published opinion, the Nebraska Court of Appeals concluded that the juvenile court was without subject matter jurisdiction to adjudicate Jesse or to conduct any subsequent proceedings regarding Jesse because there were no allegations in the petition that Jesse lacked proper parental care by reason of the conduct of Lerry, a custodial parent. *In re Interest of Devin W. et al.*, 13 Neb. App. 392, 693 N.W.2d 901 (2005). The Court of Appeals reversed the juvenile court's orders and remanded the cause with directions to dismiss the proceeding. *Id.* The State petitioned for further review. We granted the petition for further review. Because the juvenile court acquired subject matter jurisdiction upon adjudicating Jesse as a child under § 43-427(3)(a), the conclusion of the Court of Appeals to the effect that the juvenile court lacked subject matter jurisdiction as to matters involving the father, Lerry, was in error. We reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals for further proceedings.

## STATEMENT OF FACTS

Lerry and Jillian are the natural parents of Jesse, born May 25, 2001. The present juvenile action arose initially out of proceedings involving Jesse's older full brother, Brien M., born June 4, 1998, and Jesse's older half brother, Devin W., born November 4, 1996. James W., Devin's natural father, did not reside in Nebraska, and his parental rights with respect to Devin were eventually terminated.

The facts relevant to the instant appeal were described in the Court of Appeals' opinion as follows:

The State filed a juvenile petition on March 9, 2001, in the interest of Devin and Brien. The State alleged that Devin and Brien lacked proper parental care due to the fault or habits of Jillian in that on or after February 18, 2001, Jillian subjected Devin to inappropriate physical discipline resulting in physical injury to Devin. The State further alleged that Jillian's actions placed both Devin and

Brien at risk of harm. The State made no allegations concerning either Lerry or James.

An adjudication hearing was held on March 26, 2001, and continued to April 12. Jillian admitted the allegations in the petition, which admission was accepted by the court. The court found Devin and Brien to be children as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998).

On May 25, 2001, the day Jesse was born to Lerry and Jillian, the State filed a supplemental petition, alleging that Jesse lacked proper parental care by reason of the fault or habits of Jillian in that she had previously subjected Devin to inappropriate physical discipline, which act resulted in the filing of a juvenile court petition and Devin's adjudication, and that she had not corrected the conditions that served as the basis for that prior adjudication. The State alleged that this situation placed Jesse at risk of harm. The State made no allegations against Lerry in the supplemental petition.

On June 1, 2001, a dispositional hearing was held on the original petition and a rehabilitative plan was put into effect, which plan included the removal of Devin and Brien from the home of Lerry and Jillian. Devin and Brien were placed in foster care, and the court ordered reasonable visitation with Lerry and Jillian as arranged by the Department of Health and Human Services (the Department).

An adjudication hearing on the supplemental petition and a review hearing on the original petition were held on July 23, 2001. The juvenile court found that the allegations of the supplemental petition were true by a preponderance of the evidence and found Jesse to be a child as defined by § 43-247(3)(a) (Cum. Supp. 2002). The court scheduled the supplemental petition for disposition and ordered the Department to prepare a case plan.

On October 22, 2001, a dispositional hearing on the supplemental petition and a review hearing on the original petition were held. The juvenile court found that the health and safety of Devin and Brien required their continued removal from the family home and that it was in their best interests to remain in an out-of-home placement. . . . As to

Jesse, the court found it in Jesse's best interests that he remain in the temporary legal custody of the Department and in the physical care of Jillian. . . . Review hearings were held on January 8, February 7, and May 7, 2002. Following each hearing, the juvenile court found it in the best interests of Jesse that he remain in the temporary legal custody of the Department but in the physical care of Jillian. The court continued Devin and Brien's out-of-home placement, with supervised visitation by Jillian, and again provided for separate, unsupervised visitation by Lerry if Lerry so requested. . . .

The State filed a second supplemental petition on September 5, 2002. In count I of the petition, the State alleged that Devin and Brien lacked proper parental care due to the fault or habits of Lerry in that between February 8 and August 29, 2002, Lerry failed to have regular or consistent visitation or contact with Devin and Brien or failed to provide emotional care or support to them, placing them at risk of emotional harm. The State alleged in count II of the petition that between May 29, 2001, and August 29, 2002, (1) Devin and Brien had been removed from the family home and placed in the temporary legal custody of the Department, (2) Devin and Brien had been residing in foster care, (3) Lerry had knowledge of Devin and Brien's placement, and (4) Lerry failed to provide proper care, supervision, shelter, or support for Devin and Brien, placing them at risk of emotional harm. The State made no allegations in the second supplemental petition concerning Jesse.

A hearing was held on October 2, 2002, concerning all three petitions. With regard to the adjudication made in the second supplemental petition, Lerry entered a denial of the allegations therein, and the court set the second supplemental petition for formal hearing. With regard to its review of the original petition and supplemental petition, the court made findings similar to those made following the previous review hearings. However, the court found that while services had been provided in compliance with the case plan, poor progress had been made to alleviate the causes of the out-of-home placement of Devin and Brien.

The primary permanency plan for Devin and Brien remained one of reunification, with a new target date of February 2003.

On December 17, 2002, Lerry pled no contest to count II of the second supplemental petition. Count I was dismissed. The juvenile court found that Devin and Brien were children as defined by § 43-247(3)(a) in that they lacked proper parental care through the fault or habits of Lerry. The court also conducted a review of the petition and supplemental petition and made findings similar to those made following the October 2 hearing.

On January 23, 2003, a review hearing was held on the petition and supplemental petition and a disposition hearing was held on the second supplemental petition. The court found it in the best interests of Jesse for the Department to retain his temporary legal custody but found that Jesse should remain in the physical care of Jillian. The court found continued out-of-home placement to be in Devin's and Brien's best interests. . . . The court continued to note that poor progress had been made to alleviate the causes of the out-of-home placement of Devin and Brien and noted poor progress toward alleviating the cause of adjudication as it related to Jesse.

At a review hearing on May 5, 2003, the juvenile court found it in the best interests of Jesse that he remain in the physical care of Lerry and Jillian. Devin and Brien continued in out-of-home placement. The court found that reasonable efforts had been made to return custody of Devin and Brien to Jillian but that returning said custody to Jillian would be contrary to Devin's and Brien's welfare. The court again found that poor progress had been made to alleviate the causes of the out-of-home placement of Devin and Brien and the cause of adjudication as it related to Jesse. The court established a safety plan to maintain Jesse in the physical custody of Lerry and Jillian as follows:

"a. [Lerry and Jillian] shall place Jesse . . . in daycare with a licensed child care provider approved by the [Department]. Jesse shall attend daycare Monday through Friday, for a minimum of six (6) hours per day.

"b. [Lerry and Jillian] shall only leave Jesse . . . in the care of a licensed child care provider or other individual previously approved in advance by the case manager.

"c. [Lerry and Jillian] shall ensure that any individual who provides care for Jesse . . . is informed of [the safety plan] and has agreed to comply with [its] terms.

"d. [Lerry and Jillian] shall follow all recommendations of [Jesse's] medical care provider, and shall ensure that Jesse attends all regularly scheduled medical appointments.

"e. [Lerry and Jillian] shall allow family support workers, case managers, or the Guardian Ad Litem access to Jesse . . . and to the home in which he resides, and shall be subject to unannounced drop-in visits at all reasonable hours.

"f. [Lerry and Jillian] shall cooperate with a [family support worker] as arranged by the . . . Department. . . .

"g. No other individual shall reside in the home of [Lerry and Jillian] without approval of the . . . Department. . . .

"h. No other individuals shall be in the home with Jesse . . . for extended periods of time (over 3 hours) without approval of the . . . Department[.]" . . . The safety plan requirements were again continued at the review hearing of July 15.

In May 2003, Lerry and Jillian relinquished their parental rights as to Devin and Brien. As a result of this relinquishment, and the termination of James' parental rights as to Devin in August 2003, Devin and Brien were on track to be adopted by their foster family with a target date of February 2004.

A review hearing concerning Jesse was held on January 14, 2004. The State offered exhibit 57, the case plan and court report of the caseworker, prepared January 9, 2004; exhibit 58, the report of the guardian ad litem; and exhibit 59, the court-appointed special advocate's report. Exhibit 58 was received by the court without objection. Lerry objected to the receipt of exhibits 57 and 59 on the grounds of foundation, hearsay, denial of due process, and lack of the right of confrontation. Jillian joined in the objection to exhibit 57. The court received exhibits 57 and 59 over

Lerry's and Jillian's objections. The court recognized that the caseworker was not present but, after verifying that she was still employed by the Department, allowed the hearing to be continued so that Lerry and Jillian could cross-examine her concerning her report. The court noted that the court-appointed special advocate was present at the hearing and could be cross-examined if the parties desired. After brief testimony by Lerry, the hearing was recessed and continued until February 3.

At the February 3, 2004, hearing, the court heard further testimony from Lerry, as well as testimony from Jillian. Lerry offered exhibits 60 and 61, which were notebooks containing reports documenting Jesse's progress in daycare, and exhibit 64, an "Intensive Family Preservation Discharge Summary" from a company providing visitation supervision and other services. These exhibits were received without objection. The guardian ad litem offered exhibit 63, an updated version of his above-mentioned report, exhibit 58. The court received exhibit 63 over Lerry's and Jillian's objections on the grounds of foundation, hearsay, and denial of due process. The State offered exhibit 62, which included a February 2 addendum to the caseworker's report. The court received exhibit 62 over Lerry's and Jillian's objections on the grounds of foundation, hearsay, denial of due process, and lack of the right of confrontation. The State called the caseworker to testify, and she was thoroughly cross-examined by both Lerry and Jillian. . . .

At the close of the February 3, 2004, hearing, the juvenile court pronounced its ruling from the bench, finding that the evidence supported the Department's recommendation for an out-of-home placement for Jesse. The court further found that there had been reasonable efforts to maintain Jesse's placement in the parental home but that it would be contrary to his welfare for him to remain there. We note the court's comments regarding its jurisdiction over Lerry: "I would advise the parties that I feel that the Court's jurisdiction over [Lerry] is very limited. There's been no adjudication involving [Lerry] with regard to

Jesse . . . . The petition that was adjudicated against [Lerry] involved only Devin and Brien . . . . But because [Jesse] is residing with [Jillian] in the family home and the evidence is that [Jillian] is the primary caretaker for [Jesse], I am approving the [D]epartment's recommendation for out-of-home placement at this time, but the parenting assessment that you've requested that the Court order of [Lerry or] any additional individual therapy I think is beyond the scope of the Court's jurisdiction at this point, given that [Lerry], with regard to Jesse, is an unadjudicated parent. The adju[dic]ation related to children that he's not a parent to and [whom] there's no plan to reunify [him] with. So with . . . that, I will approved [sic] the out-of-home placement at this time but not those provisions relating to [Lerry], in the absence of a further filing and adjudication thereon."

The juvenile court entered an order on February 5, 2004, setting forth its findings from the February 3 hearing. The court found it in the best interests of Jesse that he be given an out-of-home placement in licensed foster care. The court found that reasonable efforts had been made to maintain Jesse's physical custody with Lerry and Jillian. The court found that it would be contrary to Jesse's welfare, health, and safety for him to remain in Lerry and Jillian's home, due to Jillian's failure to follow the court-ordered safety plan, evidence that Jesse had been exposed to cigarette smoke and excessive profanity in the family home despite his health problems and young age, Lerry's limited role in the supervision or parenting of Jesse, Jillian's failure to apply parenting skills for which extensive training had been provided, Jillian's failure to consistently participate in and make progress in her individual counseling, and the family's ongoing financial instability.

*In re Interest of Devin W. et al.*, 13 Neb. App. 392, 393-400, 693 N.W.2d 901, 903-07 (2005).

Lerry appealed to the Court of Appeals, assigning as error the juvenile court's order removing Jesse. In addition to challenging the juvenile court's order removing Jesse from Lerry and Jillian's home, Lerry assigned as error the juvenile court's

receipt of certain exhibits into evidence. Jillian filed a cross-appeal and assigned as error the juvenile court's order removing Jesse.

The Court of Appeals did not reach the assigned errors involving evidentiary rulings or the propriety of removal because it concluded that the juvenile court lacked jurisdiction. In its opinion, the Court of Appeals stated that it "must first address the issue of subject matter jurisdiction in this case as it relates to Lerry, a custodial parent against whom no allegations or accusations have been adjudicated in relation to Jesse." *Id.* at 400, 693 N.W.2d at 907. In this regard, the Court of Appeals noted that the "risk of harm to [Jesse alleged in the supplemental petition] is posed by [Jillian] and there have been no direct allegations of a lack of proper parental care by [Lerry]." *Id.* at 403, 693 N.W.2d at 909. The Court of Appeals relied upon its earlier decision in *In re Interest of Kelly D.*, 3 Neb. App. 251, 526 N.W.2d 439 (1994), and determined that due to "the lack of an adjudication as to [Lerry]," the juvenile court lacked subject matter jurisdiction for the adjudication of Jesse on July 23, 2001. *In re Interest of Devin W. et al.*, 13 Neb. App. at 403, 693 N.W.2d at 909.

In its opinion, the Court of Appeals reasoned that in order for the juvenile court to properly assert jurisdiction, " 'the petition must allege facts which would show that the child lacks proper parental care by reason of the inadequacy of any parent whose custody or right to custody might be affected, so that both parents may understand that the litigation concerns their respective rights.' " (Emphasis omitted.) *Id.* at 402-03, 693 N.W.2d at 908-09 (quoting *In re Interest of Kelly D., supra*). The Court of Appeals concluded that "[b]ecause of the omission of any allegations showing that Jesse lacked proper parental care by reason of the inadequacy of Lerry, a parent whose custody of Jesse or right to such custody might be affected, the supplemental petition was inadequate to form the basis of the juvenile court's jurisdiction." *In re Interest of Devin W. et al.*, 13 Neb. App. at 403-04, 693 N.W.2d at 909. The Court of Appeals reversed the orders of the juvenile court pertaining to Jesse and remanded the cause with directions to dismiss the proceeding.

The State petitioned for further review from the Court of Appeals' decision. We granted the State's petition for further review.

## ASSIGNMENT OF ERROR

The State asserts, restated, that the Court of Appeals erred in determining that the juvenile court was without jurisdiction for the adjudication of Jesse.

## STANDARDS OF REVIEW

A jurisdictional question that does not involve a factual dispute is a matter of law. *In re Application of Metropolitan Util. Dist., ante* p. 494, 704 N.W.2d 237 (2005). Statutory interpretation is a question of law. *Farber v. Lok-N-Logs, Inc., ante* p. 356, 701 N.W.2d 368 (2005). To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *In re Application of Metropolitan Util. Dist., supra.*

## ANALYSIS

In its petition for further review, the State claims that the Court of Appeals erred when it concluded that the juvenile court was without jurisdiction for the adjudication of Jesse. We agree with the State. We conclude that the juvenile court acquired subject matter jurisdiction over Jesse upon his adjudication as a child described in § 43-247(3)(a); that such jurisdiction extended to Jesse's custodial parent, Lerry, pursuant to § 43-247(5); and that, therefore, the Court of Appeals erred as a matter of law when it concluded that the juvenile court lacked jurisdiction. We reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals for further proceedings.

Subject matter jurisdiction deals with the court's ability to hear a case. *Anderson v. Wells Fargo Fin. Acceptance*, 269 Neb. 595, 694 N.W.2d 625 (2005). We recently stated: "Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved." *State v. Thomas*, 268 Neb. 570, 584, 685 N.W.2d 69, 82 (2004).

The subject matter jurisdiction of the juvenile court relative to this case is set forth in § 43-247, which provides, inter alia, as follows:

The juvenile court shall have exclusive original jurisdiction . . . as to any juvenile defined in subdivision (3) of this section, and as to the parties and proceedings provided in subdivision[] (5) . . . of this section. . . .

The juvenile court in each county as herein provided shall have jurisdiction of:

. . . .

(3) Any juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile . . . .

. . . .

(5) The parent, guardian, or custodian who has custody of any juvenile described in this section.

We have specifically noted that § 43-247(3)(a) "gives a juvenile court exclusive, original jurisdiction over '[a]ny juvenile . . . who lacks proper parental care by reason of the fault or habits of his or her parent.'" *In re Interest of Sabrina K.*, 262 Neb. 871, 875, 635 N.W.2d 727, 731 (2001). Such jurisdiction continues "until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." § 43-247. Further, we have repeatedly noted that to obtain jurisdiction over a juvenile, the court's only concern is whether the condition in which the juvenile presently finds himself or herself fits within the asserted subsection of § 43-247. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184

(2004); *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999).

■ With regard to juvenile court adjudication proceedings under § 43-247, we have stated that subject matter jurisdiction is vested in the juvenile court by an adjudication that a child is a juvenile described in § 43-247. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994). More importantly for the present case that is before us by virtue of the opinion of the Court of Appeals assailing the shortcomings of the supplemental petition relative to Lerry, we have noted that "it is the adjudication that a child is a juvenile, as characterized in § 43-247, which vests subject matter jurisdiction in a juvenile court, not the petition by which an adjudication is requested." See *In re Interest of L.D. et al.*, 224 Neb. 249, 259-60, 398 N.W.2d 91, 98 (1986).

■ In considering the Nebraska Juvenile Code, we have stated that "[s]ubsection 5 of § 43-247 extends the juvenile court's jurisdiction to parents, guardians, or custodians who have custody of any juvenile described in [§ 43-247]." *In re Interest of J.T.B. and H.J.T.*, 245 Neb. at 630, 514 N.W.2d at 639. Thus, we have observed that "when a juvenile court adjudicates a minor under § 43-247(3), it also obtains exclusive jurisdiction over the 'parent . . . who has custody of any juvenile described in this section.' " *In re Interest of Sabrina K.*, 262 Neb. at 875, 635 N.W.2d at 732 (quoting § 43-247(5)). Stated another way, "an adjudication under the Nebraska Juvenile Code brings all the parties [identified in § 43-247(3) and (5)] under the juvenile court's exclusive jurisdiction." 262 Neb. at 877, 635 N.W.2d at 733.

We give a plain meaning to the Nebraska Juvenile Code provisions found at § 43-247(3)(a) and (5). See, e.g., *Caspers Constr. Co. v. Nebraska State Patrol, ante* p. 205, 700 N.W.2d 587 (2005). To summarize, pursuant to the plain meaning of the controlling statutes, subject matter jurisdiction is vested in the juvenile court by an adjudication that a child is a juvenile described in § 43-247(3)(a), and pursuant to subsection 5 of § 43-247, the juvenile court's jurisdiction is extended to parents who have custody of any juvenile who has been found to be a child described in § 43-247. Thus, in the instant case, the juvenile court acquired jurisdiction over Jesse and his custodial

father, Lerry, when it found conditions that fit § 43-247(3)(a) and adjudicated Jesse as a juvenile within the meaning of § 43-247(3)(a). See *In re Interest of Sabrina K., supra.*

In *In re Interest of Devin W. et al.*, 13 Neb. App. 392, 402-03, 693 N.W.2d 901, 908-09 (2005), the Court of Appeals stated that with regard to a petition seeking to adjudicate a child under § 43-247, " 'the petition must allege facts which would show that the child lacks proper parental care by reason of the inadequacy of any parent whose custody or right to custody might be affected, so that both parents may understand that the litigation concerns their respective rights.' " (Emphasis omitted.) (Quoting *In re Interest of Kelly D.*, 3 Neb. App. 251, 526 N.W.2d 439 (1994).) This reasoning misapprehends the juvenile court's jurisdiction and the purpose of the adjudication procedure, which we explained in *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996).

In *In re Interest of Amber G. et al.*, the father claimed that the juvenile court lacked jurisdiction because the petitions under which his four children were adjudicated alleged generally that the children were at risk due to the fault and habits of their mother, and there were no allegations in the petitions that the father abused or neglected his children. We disagreed, stating "[t]his is clearly an erroneous interpretation of the jurisdiction of the juvenile court and the two-step process involved in juvenile proceedings." *Id.* at 980, 554 N.W.2d at 148. We explained the "two-step process," stating:

> In Nebraska, the rights of the parent and the child are protected by the separate adjudication and dispositional phases of the dependency proceeding. A petition brought under § 43-247(3)(a) is brought on behalf of the child, not to punish the parents. *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995). The purpose of the adjudication phase of the proceeding is to protect the interests of the child; the purpose of the dispositional phase is to determine placement and the rights of the parties in the action. . . . It is not improper for the court to sustain jurisdiction at the adjudication phase if the State [establishes a] lack of proper parental care in the child's present living situation. See *In re Interest of Constance G., supra.*

*In re Interest of Amber G. et al.*, 250 Neb. at 980, 554 N.W.2d at 148.

In *In re Interest of Amber G. et al.*, we noted that the mother had admitted the allegations of the petitions at the separate adjudications involving the children. We concluded that because the juvenile court obtained jurisdiction over the children at the adjudication stage, the father's argument that the juvenile court lacked jurisdiction because the petitions lacked specific allegations as to him was without merit. See, similarly, *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001) (concluding that biological father's claim that juvenile court lacked sufficient basis for adjudication because petition contained no allegations that he was unfit or unable to exercise appropriate parental care was without merit and further concluding that because allegations in petition had been admitted by child's custodial guardians, juvenile court properly acquired jurisdiction).

■ The juvenile court's order from which Lerry appealed refers to Lerry as an "unadjudicated parent." Moreover, the Court of Appeals discusses "the lack of an adjudication as to" Lerry. *In re Interest of Devin W. et al.*, 13 Neb. App. at 403, 693 N.W.2d at 909. We disapprove of this language, which does not accurately reflect the purpose or substance of an adjudication proceeding. As stated above, pursuant to § 43-247, a child, not the parent, is adjudicated in order to protect the child's rights. The rights of a parent are determined in the dispositional phase of the case. See *In re Interest of Brian B. et al.*, 268 Neb. 870, 878, 689 N.W.2d 184, 191 (2004) (stating "purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not the adjudication phase").

In *In re Interest of Devin W. et al.*, 13 Neb. App. at 403, 693 N.W.2d at 909, the Court of Appeals stated that Lerry was entitled to "an adjudication hearing to defend against any such allegations [of harm]." As explained above, we do not believe such statement accurately reflects the purpose of an adjudication hearing. Further, for the sake of completeness, we note that the juvenile court's adjudication order reflects that Lerry was present and represented by counsel during the adjudication hearing. We also note that no appeal was filed from the court's adjudication order,

and thus it became a final order. See *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986).

We conclude that the Court of Appeals erred as a matter of law when it concluded that the juvenile court was without jurisdiction for the adjudication of Jesse on July 23, 2001, and all subsequent proceedings. To the contrary, the juvenile court became vested with subject matter jurisdiction over Jesse when it found at the adjudication hearing that Jesse was a child within the meaning of § 43-247(3)(a), and the juvenile court's jurisdiction extended to the custodial parent, Lerry, pursuant to § 43-247(5). To the extent that *In re Interest of Kelly D.*, 3 Neb. App. 251, 526 N.W.2d 439 (1994), or other opinions refer to adjudicated parents or reach conclusions at odds with our reasoning, they are disapproved.

In view of the foregoing, we reverse the decision of the Court of Appeals. We recognize that upon granting further review that results in the reversal of a decision of the Court of Appeals, this court may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002). Due to its conclusion regarding jurisdiction, the Court of Appeals did not reach Lerry's discrete assignments of error or the assignment of error raised in Jillian's cross-appeal, and we conclude that under these circumstances, it is appropriate for the Court of Appeals to consider Lerry's and Jillian's separate assignments of error in the first instance. Thus, we do not reach their assignments of error.

## CONCLUSION

We conclude that because Jesse was adjudicated to be a juvenile within the meaning of § 43-247(3)(a), the juvenile court became vested with subject matter jurisdiction and jurisdiction extended to the custodial parent, Lerry, pursuant to § 43-247(5). We reverse the decision of the Court of Appeals that had concluded there was a lack of jurisdiction and remand the cause to the Court of Appeals for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.